**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
29229 Canwood Street, Suite 208
Agoura Hills, California   91301
Telephone:      (818) 991-8080
Facsimile:      (818) 991-8081
mbradley@marlinsaltzman.com
kgrombacher@marlinsaltzman.com

**LAW OFFICE OF YOUNG W. RYU**
Young W. Ryu, Esq. (SBN 266372)
9595 Wilshire Blvd, Suite 900
Beverly Hills, California   90212
Telephone:      (888) 365 – 8686
Facsimile:      (800) 576 – 1170
young.ryu@youngryulaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WON KYUNG HWANG, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OHSO CLEAN, INC., d/b/a CLEANWELL COMPANY; CLEANWELL COMPANY; DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3 :12-cv-06355-JCS<br>(Hon Joseph C.  Spero)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' OHSO CLEAN, INC. AND CLEAN WELL COMPANY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**DATE:**      **March 1, 2013**<br>**TIME:**      **9:30 a.m.**<br>**CTRM:**      **G** |

/ / /

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................. 1

II.    CLAIMS OF THE LITIGATION ....................................................................................... 3

III.   CLARIFICATION REGARDING DEFENDANTS' INACCURATE REPRESENTATIONS

REGARDING PLAINTIFF'S FAC .............................................................................................. 3

IV.   DEFENDANTS' ATTEMPTS TO UNDERMINE THE STUDY REFERENCED IN THE FAC LACKS

EVIDENTIARY SUPPORT AND VIOLATES A FUNDAMENTAL TENET OF FEDERAL JURISPRUDENCE 4

V.    LEGAL ANALYSIS ........................................................................................................... 5

A.   Federal Preemption Does Not Bar Plaintiff's State Law Claims ................................. 5

    1.   Congress Has Not Expressly Preempted Plaintiff's State Law Claims .......................... 7

B.   Plaintiff's Claims are Not Impliedly Preempted ........................................................ 9

C.   POM Is Inapposite ..................................................................................................... 12

D.   Plaintiff's Complaint More than Satisfies the Rule 8 Pleading Standard .................. 13

    1.   Defendants' Misconstructions of Plaintiff's Claims Does Not Compel Dismissal .............. 13

E.   Plaintiff Has Sufficiently Plead Facts to Establish That the Representations Would Be Material to a

Reasonable Consumer ...................................................................................................... 14

F.   The FAC Sufficiently States a Claim under the UCL, FAL, CLRA, Civ. Code §1710 and Cal.Comm. Code

§2313 Because Plaintiffs Has Established Reliance ........................................................... 17

    1.   Plaintiff Has Alleged Sufficient Reliance to State a Claim Under the UCL, the FAL, Breach of Express

Warranty and Fraud ......................................................................................................... 17

    2.   The Classes Should Not be Stricken for Lack of Standing ................................................. 18

    3.   Plaintiff's Complaint States A Claim Under the CLRA .................................................... 19

G.   Plaintiff Can Satisfy The Rule 9 Pleading Standard .................................................. 21

H.   Defendants' Class Certification Based Arguments Are Procedurally Improper and Substantively

Erroneous ......................................................................................................................... 22

    1.   Defendants' Class Certification Arguments are Premature ............................................... 22

    2.   Defendants Have Not Met Their Burden of Establishing that California Law Should Not Apply .......... 23

1

VI.     PLAINTIFF'S MAGNUSSON-MOSS IS VALIDLY PLEAD ....................................................25

2

VII.    CONCLUSION ...............................................................................................................................25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

State Cases

<u>Consumer Justice Center v. Olympian Labs, Inc.</u>,

   99 Cal.App.4th 1056 (2002)............................................................................................... 10

<u>Engalla v. Permanente</u>,

   15 Cal. 4th at 976 (1997) ……………………………………………………………………...15

<u>Farm Raised Salmon Cases</u>,

   42 Cal.4th 1077 (2008) ……………………………………………………………………… 6

<u>In re Tobacco II</u>,

   46 Cal.4th at 326  (2009)............................................................................................... 18

<u>Kwikset Corp. v Superior Court</u>,

   51 Cal.4th 310 (Cal.2011) ………………………………………………………………...16, 18

<u>Massachusetts Mutual Life Ins. Co. v. Superior Court</u>

   97 Cal.App.4th 1282 (2002)………………………….…………………………………………15

<u>Washington Mutual Bank v. Superior Court</u>

   24 Cal.4th 906  (2001) …………………………………………………………….……23, 24, 25

<u>Wershba v. Apple Computer, Inc.</u>,

   91 Cal.App. 4th 224 ............................................................................................... 24


**<u>Federal Cases</u>**

<u>Astiana v. Ben & Jerry's Homemade, Inc.</u>,

   2011 WL 2111796 (N.D.Cal.2011)............................................................................. 22

<u>Bell Atl. Corp. v. Twombly</u>,

   550 US 544 (2007)............................................................................................... 15

<u>Blue Sky Natural Beverage Co</u>,

   268 F.R.D. 365 ...................................................................................................15, 19

Boysen v. Walgreen Co.,

  2012 WL 2953069 (N.D.Cal. 2012) .................................................................................. 20

Buckham Co.. v. Plaintiff's Legal Comm.,

  531 US 341 (2001) ...................................................................................................................... 7

Chavez v. Blue Sky Natural Beverages,

  340 Fed.Appx. 359 (9th Cir 2009.) ....................................................................................... 20

Cipollone v. Liggett Group, Inc.,

  505 U.S. 504 (1992) .................................................................................................................... 6

Clark v. State Farm Mut. Auto. Ins. Co.,

  231 F.R.D. 405 (C.D.Cal.2005) ........................................................................................... 23

Collins v. Gamestop Corp.,

  2010 WL 3077671 (N.D.Cal.2010) ...................................................................................... 22

Cutler v. Kennedy,

  475 F.Supp. 838 (D.D.C. 1979) ........................................................................................... 11

Donohue v. Apple, Inc.,

  2012 WL 1657119 (N.D.Cal. May 10, 2012) ..................................................................... 22

English v. General Electric Co.,

  496 U.S. 72 ............................................................................................................................. 6, 7

Florida Lime and Avocado Growers, Inc. v. Paul,

  373 U.S. 132 (1963) .................................................................................................................... 6

Forcellati v. Hyland,

  876 F.Supp. 2d 1155 (2012) .................................................................................................. 22

Freeman v Time, Inc.,

  68 F.3d 285 (9th Cir. 1995) ................................................................................................... 14

Gompper v. VISX, Inc.,

  298 F.3d 893 (9th Cir.2002) ..................................................................................................... 5

Greenwood v. Compucredit Corp.,

  2010 WL 4807095 (N.D.Cal. 2010) ..................................................................................... 19

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

In re Bayer Corp. Combination Aspirin Products Marketing,

    701 F.Supp.2d 356 (E.D. NY 2010) ........................................................... 7, 8, 15

In re Epogen & Aranesp Off-Label Marketing & Sales Practices Litigation,

    590 F.Supp.2d 1282 (C.D. Cal. 2008) ............................................................... 8

In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litigation,

    758 F.Supp.2d 1077 (S.D.Cal.2010) ............................................................... 23

Jones v. Rath Packing Co.,

    430 U.S. 519 (1977) ........................................................................................ 6

Lewis v. Casey,

    518 U.S. 343  (1996) ...................................................................................... 19

Mazza v. Am. Honda Motor Co., Inc.,

    666 F.3d 581 (9th Cir.2012) ............................................................... 22, 23, 24

Medtronic, Inc. v. Lohr,

    518 U.S. 470  (1996) .................................................................................... 6, 9

New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,

    514 U.S. 645 (1995) ........................................................................................ 6

Pokorny v. Quixtar, Inc.,

    601 F.3d 987 (9th Cir.2010) .......................................................................... 23

POM Wonderful LLC v. Coca-Cola Co.,

    679 F.3d 1170 (9th Cir. 2012) .................................................................. 12, 13

Rice v. Santa Fe Elevator Corp.,

    331 U.S. 218 (1947) ........................................................................................ 6

Rosen v. Unilevel United States,

    2010 WL 4807100 (N.D. Cal. 2010) ............................................................. 14

Sanders v. Apple, Inc.,

    672 F.Supp.2d 978 (N.D. Cal. 2009) ....................................................... 19, 22

Sound Appraisal v. Wells Fargo Bank, N.A.,

    717 F.Supp.2d 940 (N.D.Cal.2010) ............................................................... 24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Stearns v. Ticketmaster Corp.,

    655 F.3d 1013 (9th Cir.2011) ................................................................................. 19

Summit Technology v. High-Line Medical Instruments,

    922 F.Supp. 299 (C.D. Cal. 1996) ............................................................................ 9

U.S. v. Watkins,

    278 F.3d 961 (9th Cir. 2002) ................................................................................... 15

Vess v. Ciba–Geigy Corp. USA,

    317 F.3d 1097 (9th Cir.2003) .................................................................................. 21

Walling v. Beverly Enters.,

    476 F.2d 393 (9th Cir.1973) ...................................................................................... 5

Whistler Investments, Inc. v. Depository Trust and Clearing Corp.,

    539 F.3d 1159 (9th Cir.2009) .................................................................................... 9

Williams v. Gerber Prods. Co.,

    552 F.3d 934 (9th Cir.2008) .................................................................................... 15

Zeisel v. Diamond Foods, Inc.,

    2011 WL 2221113 (N.D.Cal.2011) ........................................................................ 19

## Regulations

21 U.S.C. § 360k(a) ..................................................................................................... 10

21 U.S.C. §337(a) ...................................................................................................... 7, 9

21 USC §301 et seq ................................................................................................... 9, 10

Cal. Bus. & Prof.Code § 17535 .................................................................................... 19

Cal. Civ.Code § 1780(a) .............................................................................................. 20

Cal.Comm. Code §2313 ............................................................................................... 17

U.S. Const. art. VI, cl. 2    5

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Soap and water and common sense are the best disinfectants.

- William Osler, physician and one of the founding professors at Johns Hopkins Hospital

## I.    INTRODUCTION

By their motion, Defendants Ohso Clean Inc., and Clean well Inc., (collectively "Defendants") request that the Court dismiss Plaintiff's First Amended Complaint ("FAC") in its entirety with prejudice.  In their "scorched-earth" briefing, Defendants wage assaults against the jurisdiction of the Court and the proprietary of class certification all while goading the Court to render final adjudication on purely factual questions weighing on ultimate liability issues underlying the litigation.  By all rights, Defendants' motion would be more aptly titled a "motion to dismiss/motion to deny class certification/bench trial on the ultimate legal and factual issues underlying the litigation."  Such arguments strain the standards for a motion to dismiss to the point of ridiculousness.

In the case which is the subject of this motion, Plaintiff ask this Court, and a jury, to determine whether Defendants' marketing claims, including the claim that its sanitizing products "kills 99% of germs" deceives and misleads consumers into purchasing or paying more for the Product where Defendants' representations are false.

While the flaws in Defendants' motion are numerous, they can be classified in to four primary categories: (1) arguments which derive from a faulty application of law and/or fact; (2) arguments which are predicated on mischaracterizations of Plaintiff's allegations; (3) arguments which are predicated upon patently erroneous representations regarding Plaintiff's FAC, and (4) arguments which raise unripe and premature issues.

Defendants' federal preemption argument falls into the first category.  Despite Defendants' arguments to the contrary, federal law does not stand as a bar to the claims alleged by Plaintiff in the present case.  The claims which underscore this litigation center upon the determination of whether Defendants' specific marketing practices are false and misleading.  Contrary to Defendants' contention, such claims are not expressly preempted by the Food Drug and Cosmetic Act ("FDCA") because, although they may constitute violations of the FDCA,

Plaintiff is not seeking recovery under this Act.  On the contrary, the claims alleged by Plaintiff give rise to recovery under state law even in the absence of the Act.  Accordingly, the FDCA does not expressly bar Plaintiff's claims.  Moreover, while Defendants cite generally to federal regulations and to the FDA "Tentative Final Monograph for Health-Care Antiseptic Drug Products" ("FTFM"), Defendants have not cited any language therein which indicates a clear and manifest intent on the part of Congress to preempt Plaintiff's state law consumer protection claims.  In fact, because the FTFM has not been published or finalized, the FDA has, to date, never implemented any enforcement regulations pertaining expressly to antiseptic products such as the ones at issue in this litigation.  Defendants' Rule 9 attack on the FAC suffers from a similar misapplication of law and fact.

Defendants' Rule 8 challenge, as well as their challenge to the materiality of the representations at issue in this litigation, fall within the second category as such arguments are predicated on Defendants' unfounded and erroneous characterization of Plaintiff's claims and allegations.  Specifically, such arguments rely solely on Defendants' allegation that Plaintiff's claims require Defendants' products to kill germs within 30 seconds.  Plaintiff has never tethered her claims to any time frame and, as such, Defendants' attacks are predicated solely on their own "straw man" argument and should be rejected by the Court.

Defendants' allegation that Plaintiff cannot establish standing under her Unfair Competition Law ("UCL") False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), fraud, and warranty claims are all predicated upon Defendants' erroneous assertion that, "Plaintiff makes no allegation that she would not have purchased the products had she known that the statements were false." Defendants' Motion to Dismiss ("Motion") [Dkt. No 21] at 4:24-25:1. These "reliance" arguments fall within the third category of error—arguments based on false recitations of Plaintiff's allegations.  In truth, the FAC alleges, "[h]ad Plaintiff and the Class members known that Defendants' assertion was untrue, Plaintiff and the Class members ***would not have purchased Defendants' Sanitizing Products.***" FAC ¶45.(emphasis added).

Finally, Defendants' constitutional attack on Plaintiff's class action allegations falls into both the first and last categories.  The issue is premature at this stage of the litigation given that

1  disposition of the issues requires a rigorous choice-of-law analysis.  The Court simply does not

2  have the factual record it needs to properly conduct such an analysis.  Apart for the procedural

3  failings in its argument, Defendants' constitutionality argument suffers from substantive errors

4  which mandate denial.

5      For these reasons, and as discussed below, Defendants' Motion should be denied.[1]

6  **II.    CLAIMS OF THE LITIGATION**

7      Defendants OhSo Clean Inc, and Cleanwell Co., market and sell sanitizing products

8  throughout the country.   FAC [Dkt. No. 18] at ¶¶10, 11. Defendants' product line includes

9  foaming hand sanitizer, hand sanitizer spray, hand sanitizing wipes, and antibacterial foaming

10  hand soap products, FAC at ¶1. Defendants prominently represented on the label of each of the

11  products, that the products: (1) "[k]ills 99.9% of germs naturally", (2) "kill 99.99% of germs

12  including MRSA, Salmonella, Staph, and E.coli", (3) "kill 99.9% of the harmful germs that can

13  make you sick", and (4) "Sanitize hands when you can't wash with soap and water."   See e.g.

14  FAC ¶¶14. In fact, the products do not perform as represented.  FAC ¶14.

15      Plaintiff alleges that she and other reasonable consumers must and do rely on such

16  statements and that such reliance is reasonable. FAC at ¶17.  Additionally, Plaintiff alleges that

17  Defendants made and endorsed these misrepresentations, despite the fact that they knew or

18  should have known their falsity.  FAC ¶18.  Plaintiff alleges that Defendants concealed the truth

19  about the qualities of the products, in order to impact customers' purchase decisions, and were

20  keenly aware of the impact its misconduct would have on customers. FAC  ¶¶50,51.

21  Defendants' misconduct harmed Plaintiff and the class members by causing them to purchase

22  products they otherwise would not have purchased. FAC ¶45.

23  **III.    CLARIFICATION       REGARDING       DEFENDANTS'       INACCURATE**

24  **REPRESENTATIONS REGARDING PLAINTIFF'S FAC**

25  _____

26      [1] To the extent that Defendants argue Plaintiff lacks standing to seek injunctive relief
27  because she cannot allege a threat of future injury, Plaintiff concedes this is true and will agree
   to dismiss such relief from her Prayer for Relief.

28

As a threshold issue, Defendants' moving papers contain assertions regarding the allegations set forth in Plaintiff's FAC which are patently untrue.  As many of these fallacies infect and/or serve as the basis for Defendants' latter arguments, Plaintiff addresses them at the outset:

| Defendants' Inaccurate Representations | FAC Allegation |
|---|---|
| (1) "Plaintiff makes no allegation that she would not have purchased the product had she known that the statements were false." (Motion at 26-27.) | "Defendants have broadly disseminated, by way of print advertisement and internet advertisement, the representations herein alleged …. *Had Plaintiff and the Class members known that Defendants' assertion was untrue, Plaintiff and the Class members would not have purchased Defendants' Sanitizing Products.*" ( FAC ¶¶43,45.)(emphasis added). |
| (2) "No facts are alleged that would establish knowledge [by Defendants] of the alleged falsity. (Motion at 23: 26-27.) | □ "…*Defendants knew or should have known and/or were reckless in representing that the products: (i) "kills 99.99% of germs naturally", (ii) "kill 99.99% of germs including MRSA, Salmonella, Staph, and E.coli", (iii) "kill 99.9% of the harmful germs that can make you sick", and/or (iv) "Sanitize hands when you can't wash with soap and water" when, in fact, the products do not….*" (FAC ¶18)(emphasis added)<br>□ "*Defendants knew that there were no reasonable grounds for believing their assertions*, but asserted such facts nonetheless…" (FAC ¶44)(emphasis added)<br>□ "*In making and disseminating these representations, Defendant knew, or by the exercise of reasonable care should have known,* that the representations were untrue…" (FAC ¶58)(emphasis added) |
| (3)"The photographs purportedly containing such offending statements do not, in fact, contain such statements." (Motion at 23:17-19.) | The photographs referenced are intended to provide the court with a visual aide regarding the front label of the products and clearly contain the representation that the product "kills 99.99% of germs…" (FAC ¶14.)<br>The other representations are found on the back label of the product and have not been featured.  Accordingly, the pictures contain some but not all of the alleged statements. |

## IV.    DEFENDANTS' ATTEMPTS TO UNDERMINE THE STUDY REFERENCED IN THE FAC LACKS EVIDENTIARY SUPPORT AND VIOLATES A FUNDAMENTAL

**TENET OF FEDERAL JURISPRUDENCE**

In footnote three of its brief, Defendants attack a third party laboratory study referenced in Plaintiff's FAC.  Such attack, while improper, is not surprising given that the results of the study indicated that Defendants' representations that its product killed "99.99% of germs" were erroneous.  Defendants' attack lacks evidentiary support.  First, Defendants contend that the suspension kill test is contrary to FDA testing procedures.  This is not correct.  On the contrary, such methodology is expressly approved in in the FTFM.  (RJN 2 [Dkt 23] Ex. 2 at 31444.)[2]

Moreover, Defendants charge that Plaintiff does not identify whether the products tested were the same products purchased by Plaintiff.  This is immaterial.  Defendants do not allege that the formulation of the product was ever altered.  Thus, it should matter little if the product was the same one purchased by Plaintiff.  Any existing ambiguities are to be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir.1973).

At the pleading stage, the Court should assume the truth of the allegations in the complaint. *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir.2002).

**V.    LEGAL ANALYSIS**

**A.    Federal Preemption Does Not Bar Plaintiff's State Law Claims**

Defendants argue that "Plaintiff's causes of action fail as a matter of law because they are preempted by the FDCA."  Motion at 7.  Defendants' argument stems from a misapplication of well-settled preemption jurisprudence as well as clear misconstructions of Plaintiff's arguments.

Generally, the Supremacy Clause of United States Constitution provides that federal laws and treaties "shall be the supreme law of the land." U.S. Const. art. VI, cl. 2. The Supreme Court has recognized three types of federal preemption of state law under the Supremacy Clause: (1) express preemption, where Congress states explicitly the preemptive effect of its legislation on state law; (2) field preemption, where Congress intends for federal law to occupy

---

[2] Defendants seem to suggest that the test should have been conducted on human participants. However, exposing human participants to a myriad of germs, merely for the purpose of

1   exclusively an entire field of regulation; and (3) conflicts preemption, where it is impossible for
2   a private party to comply with both state and federal requirements. *English v. General Electric*
3   *Co.*, 496 U.S. 72, 78–79 (1990).Defendants argue that express and field preemption bar
4   Plaintiff's state law claims. As discussed in detail below, Defendants are wrong on both counts.

5       Preemption "fundamentally is a question of congressional intent." *English v. General Elec.*
6   *Co.*, 496 U.S. 72, 78-79 (1990).  Thus, the "purpose of Congress is the ultimate touchstone of
7   pre-emption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (internal
8   quotation marks omitted).

9       Courts have "long presumed that Congress does not cavalierly pre-empt state-law causes of
10  action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).
11  Any preemption analysis starts with the assumption that "the historic police powers of the States
12  [a]re not to be superseded ... unless that was the clear and manifest purpose of Congress." *Rice*
13  *v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)[3]. "This
14  assumption provides assurance that 'the federal-state balance' will not be disturbed
15  unintentionally by Congress or unnecessarily by the courts." *Jones v. Rath Packing Co.*, 430
16  U.S. 519, 525, 97 S.Ct. 1305 (1977) (citation omitted).  Courts apply this presumption to the
17  existence as well as the scope of preemption. *Medtronic,* supra, 518 U.S. at 485.

18      The presumption against preemption is heightened "where federal law is said to bar state
19  action in fields of traditional state regulation." *New York State Conference of Blue Cross & Blue*
20  *Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).
21  Consumer protection laws such as the UCL, false advertising law, and CLRA--  each of which
22  have been alleged by Plaintiff in this case-- have been determined to be within the states'
23  historic police powers and therefore are subject to this heightened presumption against
24  preemption. *Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1088, 72 Cal.Rptr.3d 112 (2008).

25  _____

26  providing additional support for Plaintiff's claims seems excessive particularly given that the
    FDA has a approved the far less invasive procedure utilized here.
27  [3] See also *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146–47, 83 S.Ct.
28  1210, 10 L.Ed.2d 248 (1963) (Courts, "are not to conclude that Congress legislated ouster of [a
    State] statute ... in the absence of an unambiguous congressional mandate to that effect.")

**1. Congress Has Not Expressly Preempted Plaintiff's State Law Claims**

Defendants commence their preemption argument by asserting that Plaintiff's claims fail as a matter of law because such claims are barred by the doctrine of express preemption. Yet, Defendants fail to cite a single federal statute or regulation which says, in words or substance, that the field of allegedly false advertising of antibacterial soaps and sanitizers is exclusively the province of federal law. Such a failure is fatal to Defendant's express preemption claim which, by definition, requires express language defining "explicitly the extent to which [Congress'] enactments pre-empt state law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). As such, express preemption cannot bar Plaintiff's claims because there is no written provision precluding Plaintiff from raising the claims alleged in the litigation.

Without textual support, the Court's express preemption analysis should terminate here. Defendants, however, pay no heed to such failure and, instead, rely heavily on the well-established principle that enforcement of the FDCA is the sole province of the FDA. 21 U.S.C. §337(a) ([a]ll such proceeding "for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States"); see *Buckham Co.. v. Plaintiff's Legal Comm.* 531 US 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). Because the FDCA precludes private enforcement of the FDCA, Defendants infer that Congress mandated federal enforcement and preempted any state law claims. Respectfully, in the case at bar, espousing such argument is the logical equivalent of attempting to fit a square peg in a round hole.

Here, Plaintiff **does not allege any claim arising under the FDCA nor would Plaintiff need to prove such violations to establish her claims.** Accordingly, the issue raised by Defendants – whether Plaintiff has "standing to pursue a violation of the FDCA" -- is immaterial. Plaintiff's claims allege clear violations of state and federal consumer protection statutes relating to the truth of Defendants' advertising claims. While such conduct may violate the FDCA, *the claims alleged by Plaintiff give rise to recovery under state law even in the absence of the FDCA*. This is a critical distinction as district courts have held that such claims are not preempted. See e.g. *In re Bayer Corp. Combination Aspirin Products Marketing*, 701 F.Supp.2d 356, 369 (E.D. NY 2010). As the *Bayer* Court explained, a state law claim endures if

it "manages to incorporate, but not depend entirely upon, an FDCA violation and is premised on conduct that would give rise to liability under traditional common law principles." *Id.* at 369.

In *Bayer*, the plaintiffs alleged, *inter alia,* that Bayer misrepresented the effectiveness of its Heart Advantage and Bayer Calcium products.   The Court determined that, although the statements "touch on areas regulated by the FDA, and may even require reference to the FDA" they were not preempted.  *Id.*  at 375.

Similarly, in this case, Plaintiff's claims stem from the fraudulent statements Defendants voluntarily disseminated in its advertising as well as by prominent display on the labels of the subject products.   Claims regarding such fraudulent statements (e.g. "kills 99.99% of germs") are actionable independent of the FDCA and, thus, are not preempted.

The cases cited by Defendant expressly recognizes this distinction and do not support dismissal.  While Defendants rely on *In re Epogen & Aranesp Off-Label Marketing & Sales Practices Litigation*, 590 F.Supp.2d 1282, 1287 (C.D. Cal. 2008) for the proposition that "the absence of a private right of action also prohibits the use of state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FCDA.", the holding is immaterial where, as here, Plaintiff's claims are not predicated on such violations and, accordingly are not preempted.   Curiously, Defendants turn a Nelson's eye to the holdings of the District Court which are particularly instructive to the present case.   In *Epogen,* the district court expressly held that, "to the extent that Plaintiffs have alleged that Defendants made statements that were fraudulent (i.e. literally false, misleading or omitted material facts) their claims are actionable*."*  The  *Epogen* court  explained:

> **The existence of the FDCA does not completely preclude injured parties from asserting claims of fraud or false advertising. Other legislation, state and federal, remains in effect to protect consumers from false and deceptive prescription drug advertising.** (citation)…. **In other words, the main purpose of the advertising restrictions set forth in the FDCA and its accompanying regulations is not to protect consumers from deceptive advertising, but rather to further the FDCA's underlying goal of ensuring the safety of prescription drugs.**

*Id* at 1290 (Citations omitted.)(emphasis added)

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

When applied to the facts of the present case, *Epogen* actually support's Plaintiff's argument that the consumer protection claims advanced are viable, not preempted.  Defendants' reliance on the case of *Summit Technology v. High-Line Medical Instruments*, 922 F.Supp. 299 (C.D. Cal. 1996), is similarly misplaced.  Defendants, in selectively quoting from the opinion and ignoring critical facts underlying the Court's holding, overstate the applicability of *Summit* to the present case.  In *Summit,* the District Court dismissed the plaintiff's Lanham Act claim. While the District Court did determine that "plaintiff's false and misleading advertising allegations circumvent 21 U.S.C. §337(a)'s private right of action to enforce violations of the FDCA'", the District Court explained that its holding was predicated on the fact that the case involved "the failure to disclose a 'fact'", the truth of which was pending before the FDA. *Summitt* 922 F.Supp. at 307.   Here, Plaintiff's claims involve the affirmative misrepresentation of a fact and not omissions currently under review by the FDA ("i.e. 99.99% efficacy in killing germs naturally").  The *Summit court* conceded that ***a plaintiff may bring a cause of action for "affirmatively misrepresenting facts, even if the truth of these facts may be governed by FDA regulations."*** *Summit* at 307. (emphasis added) (citations omitted).

Clearly, express preemption is inapplicable and does not bar Plaintiff's claims.

### B.      Plaintiff's Claims are Not Impliedly Preempted

In the alternative to their express preemption argument, Defendants argue that "field preemption is a complete bar to liability." Motion at 10:23-24. Under the doctrine of field preemption, preemption is implied when Congress "'so thoroughly occupies a legislative field,' that it effectively leaves no room for states to regulate conduct in that field." *Whistler Investments, Inc. v. Depository Trust and Clearing Corp.*, 539 F.3d 1159, 1164 (9th Cir.2009) (citation omitted). "Because this Court presumes that Congress "does not cavalierly pre-empt state-law causes of action," *Medtronic, Inc. v. Lohr*, 518 U.S. at 485, Defendants must demonstrate clear intent to preempt Plaintiff's claims. This, Defendants cannot do.

Defendants cite two regulations – 21 C.F.R. §201 *et seq*, and 21 USC §301 *et seq*—and the FTFM to support their contention that "Congress and the FDA have promulgated a vast body of federal law regulating the food, drug, and cosmetic industries, especially with regard to

the labeling of antimicrobial products." Motion at 11:2-3. Such reliance is misplaced as neither the regulations cited nor the FTFM support a finding of field preemption.

As regards the regulations, Defendants' overbroad and inapposite citations provide little support for their argument. Code of Federal Regulation section 201 *et seq.*, applies generally to labeling provisions for drugs yet the vast majority of the regulations are largely inapposite to the issues underlying this litigation[4]. Defendants' failure to identify any subsection which specifically applies to the issues before the Court is fatal.

Defendant's reliance on the FDCA (21 U.S.C. §301 *et seq.*) is also unavailing. A review of the legislative history of the FDCA belies any claim that Congress clearly and manifestly intended to supersede a state's power to protect consumers from false and deceptive adverting.

In *Wyeth v. Levine*, the United States Supreme Court considered the legislative history of the FDCA- albeit in the context of "failure to warning" prescription drug litigation. The *Wyeth* court reviewed draft versions of that FDCA bill and noted that Congress considered a version of the bill which provided a private right of action. Congress, however, heard testimony that such a right of action was unnecessary because common-law claims were already available under state law. 129 S.Ct. at 1199 n. 7. The Supreme Court then concluded that Congress determined that "widely available state rights of action provided appropriate relief for injured consumers." *Id*. at 1199.

In fact, some courts have determined that the failure of the FDCA to provide a private right of action constitutes implied non-preemption. As *Consumer Justice Center v. Olympian Labs, Inc.* (2002) 99 Cal.App.4th 1056, 1063(2002) (citations omitted) explained*:*

> As far as the Food, Drug, and Cosmetic Act is concerned, it would be more accurate to say the act evidences, far from implied preemption, an instance of implied nonpreemption. Congress wrote a specific preemption provision for medical devices in the Food, Drug, and Cosmetic Act. (21 U.S.C. § 360k(a).) The obvious implication is that no preemption was intended for other items covered by the Act.

---

[4] For example, the subsection includes regulations labeling of product with aspartame and; labeling of veterinary drugs 21 CFR 201.105. None of these sections, or any section or subsection of 21 CFR 201 relates to the claims in the present case.

Simply, while Defendants "private right of action" argument was misplaced in the context of the express preemption analysis, it is germane to and, in fact, undermines Defendants' field preemption argument.

Finally, Defendants' reliance on the FTFM is misplaced as the monograph does not indicate a clear and manifest intent to preempt Plaintiff's false advertising claims.  While Defendants argue that the "FDA's expansive regulations related to labeling and testing [as set out in the Monograph] clearly indicate an attempt to occupy the entire field of antimicrobial product labeling regulation." Motion at 11.7-11.  This statement is significantly undermined by the text and history of the monograph itself.

By way of background, the FDA regulates the safety and effectiveness, as well as labeling accuracy (referred to as "misbranding"), of over-the-counter drugs through a monograph procedure. 21 C.F.R. § 330.10. Under the monograph procedure, the FDA appoints a panel of qualified experts that reviews data submitted by interested parties and, after a lengthy review process, issues rules in the form of final monographs.  *Id.*  Following publication of a final monograph, the agency prohibits over-the counter drug products containing non-monograph conditions from being introduced into interstate commerce after a specified date. See *Cutler v. Kennedy*, 475 F.Supp. 838, 855 (D.D.C. 1979).

As the FTFM itself makes abundantly clear, "the legal state of each tentative final monograph however, is that of a proposed rule."  (RJN 2,  Ex, 2 at 31403.)  Said another way, to date, ***the FDA has enacted no regulations relating to antimicrobial product labeling regulation***.  While the FDA published its initial order in 1978, a final Monograph has yet to be published.  The fact that the FDA has failed to act with regard to these products for almost forty years fatally undermines Defendants' field preemption argument.

Moreover, even if the monograph was finalized by the FDA, it would not speak to the claims alleged by Plaintiff in this litigation.  As the April 2011 FDA warning letter sent to Defendants by the FDA makes clear, "such consumer-directed claims ["kills 99.99% germs naturally"; (2) "kill 99.99% of germs including MRSA, Salmonella, Staph, and E.coli"; (3) "kill 99.9% of the harmful germs that can make you sick", and (4)  "Sanitize hands when you can't

1  wash with soap and water"] are not described in any OTC final monograph, tentative

2  monograph or any of the rulemakings being considered under the OTC Drug Review." (Notice

3  of Removal [Dkt 1] ExA to Exhibit 1 at e.g. 37, 41.)

4     In the present case, field preemption does not bar Plaintiff's claims because Congress

5  has taken no steps to "occupy the field" as regards the claims alleged by Plaintiff.

6     **C.     POM Is Inapposite**

7     Defendants' devote an entire subsection of their briefing to the argument that the Ninth

8  Circuit's decision in *POM Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012)

9  should guide this Court.   In *POM*, the Ninth Circuit upheld the dismissal of claims where

10 Congress and the FDA had "spoken to" the issues the Court was being asked to adjudicate.

11 Building upon this ruling, Defendants attempt to liken their receipt of a Close Out letter to a full

12 ruling by the FDA on the claims at issue in this litigation.  This argument is factually erroneous.

13    Here, in April of 2011, Defendants received a Warning Letter from the FDA stating that

14 there was insufficient evidence to support the representations which Plaintiff is presently

15 challenging in this litigation—namely: whether CleanWell Products (i) kill 99.99% of germs

16 naturally, (ii) kill 99.99% of germs including MRSA, Salmonella, Staph, and E.coli, (iii) kill

17 99.9% of the harmful germs that can make you sick, and/or (iv) sanitize hands when you can't

18 wash with soap and water.  The Warning Letter also notified Defendants of potential violations

19 attendant to their role as contact manufacturers -- issues unrelated to the claims of this litigation.

20    Subsequently, in July of 2012, Defendants' received a close-out letter from the FDA in

21 July of 2012, which Defendants now claim represents a resolution of the issues raised in this

22 litigation by the FDA.  Based on this allegation, Defendants argue that the case should be

23 dismissed because Plaintiff should not be permitted to "undermine" a ruling of the FDA. See

24 Motion at 12:1-2.  The facts, however, do not support this argument.

25    The Close Out letter provides no indication that the FDA made any ruling on the issues

26 related to this litigation, let alone that, in prevailing in this litigation, Plaintiff would be

27

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

undermining such FDA decisions.[5]  In fact, the close out letter could have issued in response to Defendants' contract manufacturer violations.   Such facts are worlds away from those upon which the *Pom Wonderful* case was decided. The ambiguous language contained in the Close Out letter is a far cry from the specific and detailed regulations at issue in the *POM* case.  As discussed above, the FDA has not issued any regulations which pertain to antimicrobial products.  Given the divergent fact pattern, the *POM Wonderful* reasoning is clearly inapposite.

It bears further noting that, in *POM*, the Ninth Circuit made no ruling regarding preemption as to the plaintiffs' Unfair Competition and False Advertising laws.  Instead, the Ninth Circuit acknowledged that the defendant may raise preemption defense to the state law consumer's claims but remanded the case.  The Ninth Circuit- although presented with the clear opportunity—never, in *dicta* or in ruling, applied its Lanham analysis to the state law claims. Yet, Defendants now goad this court into doing just that.

### D.   Plaintiff's Complaint More than Satisfies the Rule 8 Pleading Standard

#### 1.   Defendants' Misconstructions of Plaintiff's Claims Does Not Compel Dismissal

Defendants argue that the FAC fails to state facts constituting a plausible legal claim under Rule 8.  Motion at 12:9-10. Such argument is sole predicated upon gross mischaracterization of Plaintiff's claims and should be afforded little weight. Specifically, Defendants argue that, "Plaintiff's premise rests on a fallacy—i.e. that the product must kill 99.99% of germs in **30 seconds** in order for the statements to be truthful, and the failure to do so makes the product ineffective and thus it follows that the statements are false." Motion at 14:18-20. Defendants then devote an inordinate portion of their brief to the refutation of this construct.

This "straw man" argument should be rejected as an examination of Plaintiff's complaint

---

[5] Moreover, as Plaintiff alleged in her operative complaint, Defendants have removed from its labeling the representations at issue in this litigation.  Accordingly, one could easily assume that the FDA was referencing the removal of the offensive representations when acknowledging that Defendants "addressed the violation(s)".  In such case, the FDA letter would seem to support Plaintiff's claims allegations.

reveals that such an allegation is not to be found in Plaintiff's FAC.  This fact bears repeating, ***Plaintiff has never the allegation that Defendants' product must kill 99.99% of germs in 30 seconds in order for the statements to be truthful.***

Defendants' gross mischaracterization clearly derives from Plaintiff's allegation that, in a test conducted by a third party laboratory, Defendants' product failed to kill germs at the percentage rates as represented.  During testing, Defendants' products underwent a Suspension Time Kill test which included a 30 second timing component.  FAC ¶21.  Plaintiff never alleges that the study is the sole basis for her claims nor does she tether her allegations to a specific timeframe[6].  Yet, Defendants clearly and improperly intertwine these concepts.

Here, Plaintiff's operative FAC, clearly and unequivocally alleges that Defendants' products fail to: (1) "kill 99.99% germs naturally"; (2) "kill 99.99% of germs including MRSA, Salmonella, Staph, and E.coli"; (3) "kill 99.9% of the harmful germs that can make you sick", and (4) "Sanitize hands when you can't wash with soap and water"-- although affirmatively represented to do so by Defendants.  Unlike in *Rosen v. Unilevel United States,* 2010 WL 4807100 (N.D. Cal. 2010), there is no parallel fallacy in these allegations. Quite the reverse, Plaintiff's allegations sufficiently set forth a "short plain statement…showing that the pleader is entitled to review." *Freeman v Time, Inc.* 68 F.3d 285, 289 (9th Cir. 1995). As such, Plaintiff has clearly satisfied the requirements of Rule 8.

**E.   Plaintiff Has Sufficiently Plead Facts to Establish That the Representations Would Be Material to a Reasonable Consumer**

In its "kitchen sink" motion to dismiss, Defendants proceed to argue for dismissal on the grounds that a reasonable consumer would not have found their representations deceptive. This argument is procedurally and substantively flawed.

First, the question presented is premature as it is a question of fact, which is best left for a

---

[6] Even, assuming *arguendo*, that Plaintiff had tied the falsity to a specific time frame (e.g. 30 seconds), such allegation would not be fatal.  Plaintiff alleges not merely that Defendants' representations are false, but that they are also misleading.  Thus, the issue would remain of whether it would be misleading under California law for Defendants to represent that their product killed 99.99% of germs, when, in fact, it did not after a full 30 seconds of contact time.

jury. See *Bayer* at 376. Thus, it is not surprising that "California courts ... have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir.2008) (citation omitted)[7]. Defendants' arguments do not warrant a departure from this general rule. At this preliminary stage, it suffices that Plaintiff has set forth facts that permit the inference that discovery will bear out their allegations. *Bell Atl. Corp. v. Twombly,* 550 US 544, 570, 127 S.Ct. at 1974 (2007).

Here, Plaintiff's FAC pleads sufficient facts to establish that the representation would be material to a reasonable consumer.  The FAC alleges that consumers acting reasonably were misled by the misrepresentations:

> Plaintiff and reasonable consumers must and do rely on companies such as Defendants to honestly state the nature of a product's qualities and ingredients, and companies such as Defendants intend and know that consumers rely upon statements made on packaging, labels, advertisement and on the company's website in making their purchasing decisions. Such reliance by consumers is reasonable because companies are prohibited from making false or misleading statements on their products' labels under federal and state law." (FAC ¶17)

Plaintiff's complaint further alleges that if Plaintiff and the Class members had known that Defendants' assertion were false they would not have purchased Defendants' Sanitizing Products." FAC ¶45; See *Engalla v. Permanente*, 15 Cal. 4th at 976-977 (a misrepresentation is judged to be material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction.")

Materiality is determined based on an objective standard that does not vary by class member. *U.S. v. Watkins*, 278 F.3d 961, 967-68 (9th Cir. 2002). Further discovery is needed to

---

[7] See also *Mass Mutual*, 97 Cal. App. 4th at 1292-1295; *Chavez v. Blue Sky Natural Beverage Co*, 268 F.R.D. 365, 378-79 (N.D. Cal. 2010.; *Engalla v. Permanente Medical Group, Inc*. 15 Cal.4th 951, 977 (1997).

1   fully evaluate this issue. Specifically, Plaintiff intends to utilize the following to prove her

2   claim: (a) expert testimony regarding the impact of the representations on consumers; (b)

3   testimony from Plaintiff; (c) expert testimony explaining the difference in efficacy between the

4   products actually qualities and the qualities represented by Defendants (e.g. difference between

5   99.76% effectiveness versus 99.99% effectiveness); and (d) evidence regarding Defendants'

6   expectations regarding the impact of the representations on customers' purchase decisions. At

7   the least, Plaintiff should be given an opportunity to take discovery and present examples, at the

8   proper stage of the litigation, of the types of common evidence available to prove materiality.

9          Despite these clear allegations and the incomplete factual record before the court,

10  Defendants argue that dismissal is proper.  Defendants' argument is predicated upon the same

11  flawed characterization of Plaintiff's claims which served as the basis for their Rule 8 challenge

12  discussed above.  Specifically, Defendants argue that "the FAC fails to allege *any* assertion that

13  a reasonable consumer would consider to be "material" a 0.23% and 0.75% difference with

14  respect to the Hand Sanitizers and a 14.43% and 17.11% difference with resect to the Hand

15  Soaps." Motion at 16:2-4.  As discussed above, this argument is nothing more than a red

16  herring[8].  The issue raised by Plaintiff's FAC is actually whether a reasonable consumer would

17  consider the fact that an antimicrobial product claims to kill 99.99% of germs but, in actuality

18  kills a lesser percentage, material to his/her evaluation of the product.  As the Supreme Court

19  recognized in *Kwikset Corp. v Superior Court,* 51 Cal.4th 310, 328(Cal.2011)(citations omitted):

20          Simply stated: labels matter. The marketing industry is based on the premise that

21          labels matter, that consumers will choose one product over another similar

22          product based on its label and various tangible and intangible qualities they may

---

[8] Moreover, the argument is not predicated upon any scientific understanding.  Defendants'
citation to numerical differences are essentially meaningless as such reference fail to account
for the particular effects of such percentage point discrepancies.  By way of example, if a person
has a million germs on their hand and they used a product that killed 99.76% of germs, after
using the product they would still have 2,400 germs on their hands.  Whereas, if they used a
product that was 99.99% effective they would only have 100 germs left.  The product that was
99.76% effective leaves 2,300 more germs on the person's hand.  The difference is undeniably
material.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

come to associate with a particular source.

Given the allegations in the complaint, the well settled importance of labels and marketing on consumer choice, and general logic which dictates that representations regarding the ability of a product to perform the functions for which it is purchased would be material --this Court cannot determine as a matter of law that a significant portion of the general consuming public acting reasonably would not find the representations material.

**F.     The FAC Sufficiently States a Claim under the UCL, FAL, CLRA, Civ. Code §1710 and Cal.Comm. Code §2313 Because Plaintiffs Has Established Reliance**

Defendants allege that Plaintiff's UCL, FAL, CLRA, fraud and express warranty claims are subject to dismissal because Plaintiff has failed to sufficiently plead reliance on the subject representations[9].  In particular, Defendants cite to Plaintiff's allegation that, "[h]ad [she] known that there was <u>insufficient evidence</u> to support these claims, she would not have purchased the produced" and argues that this is Plaintiff's "only alleged reliance". Motion at 17:23-25. Defendants represent that "Plaintiff makes no allegation that she would not have purchased the product had she known that the statements were false." (Motion at 26-27.) This is untrue.  The FAC unequivocally alleges that, "[h]***ad Plaintiff and the Class members known that Defendants' assertion was untrue, Plaintiff and the Class members would not have purchased Defendants' Sanitizing Products***. FAC ¶45.(emphasis added).This allegation is incorporated by reference as though fully set forth therein for Plaintiff's UCL, FAL and CLRA claims.  (See FAC ¶¶ 55, 60 and 66 respectively.)

**1.     Plaintiff Has Alleged Sufficient Reliance to State a Claim Under the UCL, the FAL, Breach of Express Warranty and Fraud**

To satisfy the standing requirements imposed by Proposition 64, a party must " (1) establish

---

[9] Defendants further attack Plaintiff's UCl claim on the grounds that "Plaintiff has no standing to assert a failure to substantiate because only the Federal Government can attack such claims, not private individuals."  As this case does not involve substantiation claims and Defendant's

a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322, 120 Cal.Rptr.3d 741, 246 P.3d 877 (Cal.2011). These standing requirements apply equally to the UCL and FAL. *Id* at 321–22. "[P]laintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of Proposition 64 and have standing to sue." *Id.* at 317.

Here, by alleging that Plaintiff and the Class members would not have purchased products if they knew the representations were untrue Plaintiff has satisfied that pleading requirements for the UCL and FAL claims. *In re Tobacco II*, 46 Cal.4th at 326, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009)("[a] plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." (citations omitted).)

As Defendants' fraud and express warranty claims are predicated solely upon the same lack of "reliance" argument, they must likewise fail.

### 2.    The Classes Should Not be Stricken for Lack of Standing

Defendants argue that the "Nationwide Class" and the "California Class Sub-Class" do not meet the standing requirements for class plaintiffs because the definitions "necessarily include individuals who <u>did not see or were not deceived</u> by the alleged advertisements and thus, suffered no damages.  Motion at 18:3-6. The flaws in this argument are many.

First, as discussed below, Defendants certification attacks are premature at this stage of the litigation.   The Court should refrain from considering class certification issues until presented with a sufficiently developed factual record following discovery.

Second, the majority of authority indicates that it is improper for this Court to analyze

---

preemption argument has been addressed in Section__, supra, Plaintiff shall not spend additional page space disputing this inapposite assertion.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

unnamed class members' Article III standing where, as here, Defendants do not successfully challenge the putative class representative's standing. See *Lewis v. Casey*, 518 U.S. 343, 395, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (class certification "does not require a demonstration, that some or all of the unnamed class could themselves satisfy the standing requirements for named plaintiffs."). As the Ninth Circuit observed in *Stearns*, this Circuit has repeatedly held that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements.... Thus, we consider only whether at least one named plaintiff satisfies the standing requirements." See *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir.2011) (citation omitted).[10] As demonstrated above, Plaintiff has sufficiently established standing and Defendants' argument should be rejected.

Defendants' reliance on *Sanders v. Apple, Inc.* 672 F.Supp.2d 978, 990-991 (N.D. Cal. 2009) is wrong-footed.   In *Sanders*, the plaintiffs alleged that Apple falsely exaggerated in public statements that, for example, images on the computer monitor they purchased would "look way better on these glossy, beautiful, crisp displays" and on its website that the monitor could display "millions of colors," when it could only display 262,144 colors. *Id.* at 983. The plaintiffs asserted claims on behalf of all customers who purchased the monitor, though they did not dispute that the representations at issue were not directed to all class members. The court struck plaintiff's class allegations, but granted plaintiff leave to allege a narrower class. Here, the challenged misconduct was directed to all class members. The misrepresentations at issue were prominently featured on the labels of the subject products.   Accordingly, all class members were exposed to the representations.

### 3.      Plaintiff's Complaint States A Claim Under the CLRA

To state a claim under the CLRA Plaintiff must allege, among other things, that he personally suffered a cognizable injury-in-fact as a result of the false advertising, unfair trade practice, CLRA violation, and common-law fraud. See Cal. Bus. & Prof.Code § 17535

---

[10] See also *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *4, 2011 (N.D.Cal.2011); *Greenwood v. Compucredit Corp.*, 2010 WL 4807095, at *3 (N.D.Cal. 2010); *Chavez,* 268

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

(allowing suits by "any person who has suffered injury in fact and has lost money or property as a result of a violation of" the FAL); *Id.*. § 17204 (allowing suits by "a person who has suffered injury in fact and has lost money or property as a result of a violation of" the UCL); Cal. Civ.Code § 1780(a) (allowing suits by a "consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared unlawful by [CLRA]");

The complaint contains the following allegations, which are sufficient to allege that Plaintiff has been injured-in-fact-by Defendants' conduct. First, Plaintiff purchased Defendants' products based on the representations they kill 99.99% of germs including MRSA, Salmonella, Staph and E. Coli. See e.g. FAC ¶ 45. Second, Defendants' Products do not kill 99.99% of germs. See Complaint ¶¶ 30, 31, 33. Third, and most importantly, Plaintiff incurred personal monetary loss as a result of appellees' purported misrepresentations. FAC ¶ 19, 63.

In summary, Plaintiff asserts that she purchased antimicrobial products that she otherwise would not have purchased in absence of the alleged misrepresentations. As a result, Plaintiff personally lost the purchase price, or part thereof, that she paid for those products. The Ninth Circuit has determined that such allegations "are not merely formulaic recitals of the elements of each cause of action. *Chavez v. Blue Sky Natural Beverages,* 340 Fed.Appx. 359, 361-362 (9th Cir 2009.)

Defendants reliance on *Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D.Cal. 2012), is improper.  The *Boysen* court, found that the failure to disclose arsenic and lead levels in fruit juices was insufficient to demonstrate an injury in fact because plaintiff consumed the juices without suffering any harm. *Boysen*, 2012 WL 2953069, at *4. Notably, the court observed that the juices did not have a "diminished value" due to the presence of the lead. *Id.* The issue before the court was whether standing on economic injury grounds was sufficient in context of products liability case.  This case is not a products liability case, but a false and misleading advertising case, and thus, *Boysen* is neither relevant nor instructive. Here, Plaintiff's allegations, which specifically contend that the Plaintiff would not have purchased the item if

---

F.R.D. at 365.

she had known it did not, *inter alia*, kill 99.99% of germs is sufficient to establish injury in fact.

### G.     Plaintiff Can Satisfy The Rule 9 Pleading Standard.

Defendants argue that Plaintiff fails to meet Rule 9's specificity requirement for claims that involve allegations of fraud or misrepresentation.  This contention is belied by the FAC.  Rule 9 requires that averments of fraud be accompanied by the "who, what, where, when, and how" of the misconduct charged.  *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003).

Here, the FAC provides sufficiently particularized allegations as required by Rule 9:

| Requirement | Allegation |
|---|---|
| **Who:** | Defendants, Ohso Clean, Inc., d/b/a Cleanwell Company; Cleanwell Company FAC  ¶¶4, 5, 10, 11, 13 |
| **What:** | Defendants assert, as fact, that their Sanitizing Products effectively (i) kill 99.99% of germs naturally, (ii) kill 99.99% of germs including MRSA, Salmonella, Staph, and E.coli, (iii) kill 99.9% of the harmful germs that can make you sick, and/or (iv) sanitize hands when you can't wash with soap and water. Defendants' assertions are false because their Sanitizing Products do not effectively perform as represented, FAC  ¶¶43,45 |
| **Where** | In its nationwide advertising campaign (via print and web) and on the labels of its CleanWell All-Natural Foaming Hand Sanitizer, CleanWell All-Natural Hand Sanitizer, CleanWell All-Natural Hand Sanitizing Wipes, and/or CleanWell All-Natural Antibacterial Foaming Hand soap products; FAC ¶1 |
| **When:** | During the Class Period FAC ¶24, 57;[11] |
| **How Statements Mislead:** | Plaintiff and the Class would not have purchased the product but for the representation and thus, she was deceived. FAC ¶45. |

Moreover, while Defendants allege that Plaintiffs fail to identify which of the products "contain which of the four alleged false or misleading representations" such contention is in error.  Motion at 23:1415.  Plaintiff clearly alleges that the representations appear on the front and back labeling of all the products at issue. FAC ¶14.

---

[11] While Defendants attack Plaintiff's allegation that she purchased the product in July of 2011 is insufficient, Defendant's own case law undermines its position.  Defendants go all the way to Illinois to support the proposition that "the heightened standard [of Rule 9(b)] requires more than an allegation that the fraud occurred sometime during a period of months or years".  *Eromon v. Grand Auto Sales, Inc.*351 F.Supp 2d 825, 828 (N.D. Ill. 2004).  Plaintiff's allegations are far more specific.  Rather than alleging a general year, Plaintiff narrows the complaint to a specific thirty-one day window.

Simply, Defendants motion to dismiss on the grounds that Plaintiff has failed to sufficiently plead allegations of fraud must be denied as Defendant's arguments extend this heightened requirement to the point of absurdity.

### H.   Defendants' Class Certification Based Arguments Are Procedurally Improper and Substantively Erroneous

#### 1.   Defendants' Class Certification Arguments are Premature

Defendants, relying on *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir.2012) argue that "Plaintiff's claims also fail because the Court cannot constitutionally apply the law of California to residents of other states." Motion at 20:5-60. As a preliminary matter, *Mazza* did hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws, which is unsurprising given the case-specific nature of choice-of-law analysis. Indeed, the court made clear that its holding was cabined to the facts before it. *Id.* at 594.

Moreover, Defendants' attack on Plaintiff's class allegations is unripe at this stage of the litigation. See e.g. *Forcellati v. Hyland*, 876 F.Supp. 2d 1155, 1159 (2012).   Class allegations typically are tested on a motion for class certification, not at the pleading stage. See *Collins v. Gamestop Corp.*, 2010 WL 3077671, at *2 (N.D.Cal.2010). It is true that a few courts have held that Rule 12(f) provides a means of striking class allegations. See *Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 991 (N.D.Cal.2009). However, such a motion appears to allow parties a way to circumvent Rule 23 in order to make a determination of the suitability of proceeding as a class action without actually considering the motion for class certification. See *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796 (N.D.Cal.2011).

The allegations at issue in this case are particularly unsuitable for adjudication at the pleading stage.  The issue framed by Defendants—the propriety of extraterritorial application of California consumer protection laws—involves a detailed choice of law analysis such as that performed in *Mazza*.  Significantly, *Mazza* was decided on a motion for class certification, not a motion to dismiss. At this stage of the instant litigation, a detailed choice-of-law analysis would be inappropriate. See *Donohue v. Apple, Inc.*, 2012 WL 1657119, at *7 (N.D.Cal. May 10,

2012) ("Although *Mazza* may influence the decision whether to certify the proposed class and subclass, such a determination is premature [at the pleading stage]."). In fact, courts rarely undertake choice-of-law analysis to dismiss class claims at this early stage in litigation. See *In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F.Supp.2d 1077, 1096 (S.D.Cal.2010) ("In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage.").

Since the parties have yet to develop a factual record, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case. See *Pokorny v. Quixtar, Inc*., 601 F.3d 987, 995 (9th Cir.2010) (noting that California's choice-of-law rules require courts to find that there is a "material difference" between the laws of different states on the basis of the facts presented in each case). Additionally, once the relevant facts of the case have been explored during discovery, it is possible that Plaintiff could narrow or define the class in such a way at the class certification stage to make any differences between applicable laws immaterial. Moreover, should choice-of-law analysis appear to pose problems at the class certification stage, Plaintiff could seek to certify subclasses of putative class members from individual states or subclasses of class members from groups of states with consumer protection laws that are not materially different.

Here, so long as the class action allegations "address each of the elements of Rule 23, relate to the subject matter of the litigation, and are not redundant, immaterial, or impertinent," the court should find that the allegations are sufficient to survive a motion to dismiss. See *Clark v. State Farm Mut. Auto. Ins. Co*., 231 F.R.D. 405, 407 (C.D.Cal.2005).

> **2.    Defendants Have Not Met Their Burden of Establishing that California Law Should Not Apply**

California employs a three-step "governmental interest analysis" to determine which state's (or states') law should apply. *Washington Mutual Bank v. Superior Court,* 24 Cal.4th 906, 919; 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001).

First, the court must determine whether the relevant law of each of the jurisdictions is

different. *Id*. If the laws are identical, there is no conflict of laws issue, and California law may be applied to nationwide or multi-state class claims.

Where states' laws do differ, the court proceeds to the second step of the analysis, and "examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." *Mazza*, 666 F.3d at 590. (citations omitted). In some instances, the particular facts of a case will demonstrate that a true conflict of laws does exist. In such circumstances, the court must proceed to the third step of the governmental interest's analysis and compare the strengths of the relative interests at stake. *Wash. Mut. Bank*, 24 Cal.4th at 920. The question is not which law is "better," but rather which state's interests would be most impaired by application of another state's law. *Mazza*, 666 F.3d at 593 (internal citation and quotation omitted). This "comparative impairment" inquiry requires a detailed examination of the states' relative commitment to their respective laws, as well as the history and purpose of those laws. *Wash. Mut.*, 24 Cal.4th at 920.

Here, Plaintiffs have met their burden to show that California has sufficient contacts to the claims at issue to ensure that application of California law is constitutional. The claims here center on a common marketing scheme perpetrated in connection with the sale of a California product, and much of the conduct alleged took place in California. FAC ¶¶13, 19, 24. Moreover, Plaintiffs have established that Defendants are headquartered solely in California and Plaintiff and the members of the California sub-class all reside in California.. FAC ¶¶ 3, 4,5,24. Accordingly, application of California law to the class would be neither arbitrary nor unreasonable given these connections.  At the pleading stage, such allegations are more than sufficient to support the application of California law to a nationwide class[12].

---

[12] See *Wershba v. Apple Computer, Inc.*, 91 Cal.App. 4th 224, 241–42 (2001) (certifying nationwide class where misrepresentations were prepared and distributed from California and policy change was made at headquarters in California); *Sound Appraisal v. Wells Fargo Bank, N.A.*, 717 F.Supp.2d 940, 945 (N.D.Cal.2010)(applying California law to foreign company where alleged it conspired with a defendant headquartered in California, conspiracy was planned and implemented in California, and wrongful acts emanated from the other defendant's California offices).

Thus, the burden thus shifts to Defendants to show that foreign law, rather than California law, should apply. *Wash. Mut. Bank*, 24 Cal.4th at 921. Defendants have not met their burden. Apart from conclusory citations to case law, Defendants have presented no evidence that California law varies from any other law as relates to the advertising of the antimicrobial products at issue in this litigation.  Having failed to identify any true conflict, Defendants necessarily fail to carry their burden to demonstrate that the interests of any foreign jurisdiction outweigh California's interest in applying its own consumer protection laws to the facts of this case. See *Washington Mut.*, 24 Cal.4th  at 921.

## VI.    PLAINTIFF'S MAGNUSSON-MOSS IS VALIDLY PLEAD

Defendants argue that Plaintiff's Magnusson-Moss Claim cannot survive because Plaintiff has failed to sufficiently plead her warranty and false advertising claims.  Defendants' argument must fail because, as discussed above, Defendants has failed to establish any deficiencies in the pleading of Plaintiff's warranty and advertising claims.

## VII.    CONCLUSION

For all of the foregoing reasons, and on the basis of the authorities cited herein, Defendants' Motion to Strike should be denied.  If the motion is granted in any manner, except as to the injunctive relief claim, Plaintiff seeks leave to amend to correct the deficiency.


DATED:  February 8, 2013              **MARLIN & SALTZMAN, LLP**
                                      **LAW OFFICE OF YOUNG W. RYU**


                                      By:  _/S/  Kiley L. Grombacher_____
                                           Kiley Lynn Grombacher, Esq.
                                           Attorneys for Plaintiff

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS