1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    WON KYUNG HWANG,                         Case No. C-12-06355 JCS

          Plaintiff,
8
                                              **ORDER RE MOTION TO DISMISS,**
     v.
9                                             **MOTION TO STRIKE**

10   OHSO CLEAN, INC., et al.,                [Docket Nos. 21, 22]

          Defendants.
11

12

13   **I.       INTRODUCTION**

14           Plaintiff Won Kyung Hwang brings this purported class action on behalf of a nationwide

15   class of consumers who have purchased Defendants' CleanWell sanitizing products alleging that

16   statements about the efficacy of these products on their labels are untrue and/or misleading.  In her

17   First Amended Complaint, Plaintiff asserts six claims under California's consumer protection laws

18   and a claim under the federal Magnuson Moss Act.  Defendants Ohso Clean, Inc. and Cleanwell

19   Company (hereinafter, referred to collectively as "Defendants" or "CleanWell") bring a Motion to

20   Dismiss First Amended Complaint ("Motion to Dismiss") seeking dismissal of Plaintiff's claims

21   on the basis that they are preempted under the Federal Food Drug and Cosmetic Act ("FDCA"),

22   and that they fail on a number of other grounds as well.  Defendants also bring a Motion to Strike

23   asking the Court to strike what they contend are improper class allegations and improper

24   allegations relating to punitive damages and non-restitutionary monetary loss.  A hearing on the

25   Motions was held of Friday, March 22, 2013 at 9:30 a.m.  For the reasons stated below, the

26   Motion to Dismiss is DENIED.  The Motion to Strike is GRANTED in part and DENIED in part.[1]

27   _____

28   [1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28
     U.S.C. § 636(c).

United States District Court
Northern District of California

## II.    BACKGROUND

### A.    First Amended Complaint

In the First Amended Complaint ("FAC"), Plaintiff alleges that Defendants market and sell sanitizing products nationwide.  FAC ¶¶10, 11.  According to Plaintiff, Defendants' product line includes foaming hand sanitizer, hand sanitizer spray, hand sanitizing wipes, and antibacterial foaming hand soap products ("Sanitizing Products").  FAC ¶1.  Plaintiff alleges that until "sometime after July of 2012," Defendants prominently represented on the labels of their products that they: (1) "[k]ill[] 99.9% of germs naturally," (2) "kill 99.99% of germs including MRSA, Salmonella, Staph, and E.coli," (3) "kill 99.9% of the harmful germs that can make you sick," and (4) "Sanitize hands when you can't wash with soap and water."  FAC ¶¶14, 23. Plaintiff further alleges that these claims are unfair and fraudulent and constitute "unfair, deceptive, untrue or misleading advertising."  FAC ¶ 16.  Plaintiff alleges that she and other reasonable consumers must and do reasonably rely on "companies such as Defendants to honestly state the nature of the products' qualities and ingredients."  FAC ¶17.  Additionally, Plaintiff alleges that Defendants made and endorsed these misrepresentations, despite the fact that they knew or should have known their falsity.  FAC ¶18.  Plaintiff alleges that Defendants "suppressed the material facts that Defendants' Sanitizing Products do not effectively perform as represented . . . with the intent to reap the financial windfall from the sale of Defendants' Sanitizing Products that do not effectively perform as represented."  FAC ¶¶50, 51. Plaintiff alleges that had she and the purported class members "known the Defendants' assertion was untrue, [they] would not have purchased Defendants' Sanitizing Products."  FAC ¶45.

Plaintiff asserts the following claims on the basis of these factual allegations: 1) Breach of Express Warranty, Cal. Com. Code § 2313; 2) Deceit, Cal. Civ. Code § 1710(2); 3) Concealment, Cal. Civ. Code § 1710(3); 4) False Advertising Law ("FAL"), Cal Bus. & Prof. Code §§ 17500, *et seq.*; 5) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; 5) Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; and 6) Magnuson Moss Act, 15 U.S.C. §§ 22301, *et seq.*

United States District Court
Northern District of California

2

**B.    The Motion to Dismiss**

In their Motion to Dismiss, Defendants contend that all of Plaintiff's claims are preempted under the FDCA, either expressly or under the doctrine of implied preemption.  Motion to Dismiss at 8-12.  Express preemption applies, according to Defendants, because the FDCA gives the Food and Drug Administration ("FDA") comprehensive regulatory authority for Over-the-Counter ("OTC") Topical Antimicrobial products, such as hand sanitizers and antimicrobial soaps.  *Id*. at 8 (citing  21 C.F.R. §§ 201 *et seq*. and 21 U.S.C. §§ 321 *et seq*., 21 U.S.C. §352 ).   Further, Defendants assert that "hand sanitizers and antimicrobial hand washes are considered by the FDA as 'drugs' and are regulated by the FDA under the 1994 Tentative Final Monograph ("TFM") . . . and, *inter alia*, 21 U.S.C. §352 [Misbranded Drugs and Devices]."  *Id*. (citing Request for Judicial Notice in Support of Defendants' Motion to Dismiss and Motion to Strike First Amended Complaint  ("RJN No. 2"), Ex. 2).[2]  Because the FDCA contains an express preemption clause, Defendants assert, Plaintiff's claims are preempted.  *Id*. at 9 (citing § 337(a) of the FDCA ("all proceedings for the enforcement, or to restrain violations of [the Act] shall be by and in the name of the United States"); *Gile v. Optical Radiation Corp*., 22 F.3d 540, 544 (3d Cir. 1994), *cert. denied*, 513 U.S. 965 (1994); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993), *cert. denied*, 510 U.S. 1197 (1994); *Ginochio v. Surgikos, Inc*., 864 F. Supp. 948, 956 (N.D. Cal. 1994); *In re Epogen & Aranesp Off-Label Mktg & Sales Practices Litig*., 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2009)).

In the alternative, Defendants assert, Plaintiff's claims are impliedly preempted under the doctrine of field preemption because Congress and the FDA have "promulgated a vast body of

---

[2] Defendants request that the Court take judicial notice of Plaintiff's October 18, 2012 "Notice" letter on the basis that the allegations in the complaint regarding notice under § 1770 of the Consumer Legal Remedies Act  ("CLRA") necessarily rely on the letter.  *See* RJN No. 2 at 2-3 (citing FAC ¶ 68, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *In re Tibco Software Secs. Litig*., 2006 U.S. Dist. LEXIS 36666, at * 47-48 (N.D. Cal. May 24, 2006)).  Defendants also request that the Court take judicial notice of the FDA's "Tentative Final Monograph for Health-Care Antiseptic Drug Products" dated June 17, 1994 on the basis that it is an official record of the FDA and its authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *Id*. at 3 (citing *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Interstate Natural Gas Co. v. Southern California Gas Co*., 209 F.2d 380, 385 (9th Cir. 1953).  The Court finds that it may take judicial notice of both documents and therefore GRANTS Defendants' request.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    federal law regulating the food, drug and cosmetic industry, especially with regard to labeling of

2    antimicrobial products." *Id.* at 11 (citing FDCA, 21 C.F.R. §§ 201 *et seq.* , 21 U.S.C. §§ 301 *et*

3    *seq*., RJN No. 2, Ex. 2 (TFM) at 31403).   According to Defendants, these laws and regulations

4    reflect an intent to "occupy the entire field of antimicrobial product labeling regulation," thus

5    preempting state law claims based on alleged deceptive labeling of antimicrobial products.  *Id.*

6        Defendants assert that the Ninth Circuit's decision in *POM Wonderful LLC v. Coca-Cola*

7    *Co*., 679 F.3d 1170 (9th Cir. 2012) is applicable here; in that case, the court found that the

8    plaintiff's Lanham Act claim that defendant's juice product label was misleading was barred by

9    the FDCA and the regulations promulgated thereunder by the FDA, because those regulations

10   indicated that the FDA had already "considered and spoken to what content a label must bear" and

11   had apparently authorized the defendant's labeling.  Defendants argue that the same can be said

12   here, pointing to the letter sent by the FDA dated July 19, 2012, stating that Defendants had

13   "addressed the violation(s)" contained in its earlier Warning Letter.  *Id.* at 11-12 (citing Request

14   for Judicial Notice in Support of Defendants' Motion to Dismiss and Motion to Strike ("RJN No.

15   1"), Ex. 1 (close-out letter)).

16       Defendants argue that Plaintiff's claims also fail for the following reasons:

17   1) Rule 8 of the Federal Rules of Civil Procedure:  According to the allegations in the FAC, the

18   testing cited by Plaintiff measured the percentage of germs killed by Defendants' products in thirty

19   seconds whereas the allegedly misleading statements on the labels contained no such time

20   limitation, rendering the allegation that the statements on the product labels were misleading

21   implausible.  *Id*. at 12-14 (citing FAC ¶ 21).  Therefore, Defendants assert, Plaintiff's allegations

22   do not satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure under

23   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

24   *Id*. at 2-3, 12-14.  Defendants cite to *Rosen v. Unilever United States, Inc.*, 2010 WL 4807100

25   (N.D. Cal., May 3, 2010) as instructive example in which the court found the plaintiffs' claims

26   implausible.

27   2) Allegations relating to materiality:  Defendants contend that even assuming the results of the

28   testing cited in the FAC are accurate as to the efficacy of their products, Plaintiff has failed to

1    allege any facts that would establish that a reasonable consumer would consider the discrepancies

2    between the statements on the labels and the actual percentage of germs killed by Defendants'

3    products to be material.  *Id*. at 3, 14-16.   According to Defendants, liability on Plaintiff's UCL,

4    FAC and CLRA claims can be established only if the misrepresentation contained within an

5    allegedly misleading advertisement would be found material by a reasonable  consumer.  *Id*. at 15

6    (citing *Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008); *Glenn K. Jackson Inc.*

7    *v. Roe*, 273 F.3d 1192, 1201 n. 2(9th Cir. 2001)).  To meet this standard, Defendants assert,

8    Plaintiff must allege that "a significant portion of the general consuming public or of targeted

9    consumers, acting reasonably under the circumstances could be misled," *id*. at 16 (citing *Lavie v.*

10   *Procter & Gamble Co*., 105 Cal. App. 4th 496, 512 (2003)), or that the alleged misrepresentation

11   would "play a substantial part" in the reasonable consumer's decision to purchase the product.  *Id*.

12   (citing *Ross v. Sioux Honey Assoc*., 2013 U.S. Dist. LEXIS 6181, *49 (N.D. Cal. January 14,

13   2013)).

14   3) <u>Allegations relating to reliance</u>:  Defendants argue that Plaintiff's UCL, false advertising,

15   CLRA, fraud and warranty claims fail for the additional reason that Plaintiff has not alleged any

16   facts showing that she actually relied on the misstatements.  *Id*. at 4-5, 16-19.  According to

17   Defendants, the only allegation in the FAC as to reliance is in Paragraph 19, which states, "[h]ad

18   Plaintiff known that there was insufficient evidence to support these claims, she would not have

19   purchased the product."  *Id*. at 4 (citing FAC ¶ 19).  This amounts to a failure to substantiate

20   claim, Defendants assert, which cannot be brought by private individuals but rather, can only be

21   asserted by the Federal Government.  *Id*.  Defendants contend that Plaintiff does not allege in her

22   complaint that she would not have purchased the product if she had known the statements were

23   false.  *Id*. at 4-5.  Further, Defendants argue, the class does not have standing because the class

24   definition includes individuals who did not see or were not deceived by the alleged advertisements

25   and individuals who suffered no damages.  *Id*. at 5 (citing *Sanders v. Apple, Inc.*, 672 F. Supp. 2d

26   978, 990-991 (N.D. Cal. 2009)).

27   4) <u>Application of California law to a nationwide class</u>:  Defendants contend that under *Mazza v.*

28   *Am. Honda Motor Co*., 666 F.3d 581, 585 (9th Cir. 2012), nationwide classes do not have standing

United States District Court
Northern District of California

to assert claims under California consumer protection statutes. *Id*. at 5, 20-22.  Therefore, Defendants argue, the Court should hold that a nationwide class action cannot be brought as a matter of law.

5) Pleading requirements for fraud claim:  Defendants argue that Plaintiff has failed to meet the heightened pleading requirements for Plaintiff's fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure. *Id*. at 5-6, 22-24.  According to Defendants, all of Plaintiff's claims sound in fraud and therefore must include the "who, what, when, where and how" of what happened. *Id*. at 22-23 (citing *Vess v. Ciba-Geigy Corp*., 317 F.3d 1097, 1103-04 (9th Cir. 2003)).  Defendants argue that this standard is not met because Plaintiff fails to identify the specific products she purchased, when she purchased the products, or which allegedly misleading statements were on which product labels. *Id*. at 23 (citing FAC, ¶¶ 1, 14, 19).  Further, Defendants assert, Plaintiff's allegations are not sufficiently specific because she alleges no facts showing that Defendants knew or were aware of the falsity of the statements on the labels at the time of the sale. *Id. (citing Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1145 (9th Cir. 2012); *Alban v. BMW of N. Am*., 2011 U.S. Dist. LEXIS 26754, at * 15 (D.N.J. Mar. 15, 2011)).

6) Standing to seek injunctive relief:  Defendants argue that Plaintiff lacks standing to seek injunctive relief  because it is alleged in the FAC that the allegedly misleading statements were removed from the labels in July of 2012 and therefore, there is no threat of future injury, as a matter of law. *Id*. at 6 (citing FAC ¶ 23, *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151 (N.D. Cal. 2010), 24-25).

7) Magnusson-Moss Claim:  Defendants contend that to the extent the Magnusson-Moss claim is based on state law, this claim fails for the same reasons Plaintiff's state law claims fail. *Id*. at 24.

In her Opposition brief, Plaintiff argues that the doctrines of express and implied preemption do not apply.  Opposition at 1-2, 5-13.  With respect to express preemption, Plaintiff argues that there is no federal statute or regulation that says that "the field of false advertising of antibacterial soaps and sanitizers is exclusively the province of federal law." *Id*. at 7.  Further, Plaintiff asserts, the rule that only the FDA can enforce the FDCA does not apply because Plaintiff is not asserting a claim under the FDCA, even though the conduct at issue might give rise to such

1    a claim, but rather is asserting claims under state law that exist independent of the FDCA.  *Id.*

2    (citing *In re Bayer Corp. Combination Aspirin Products Marketing*, 701 F. Supp. 2d 356, 369

3    (E.D. N.Y. 2010)).   According to Plaintiff, a state law claim is not expressly preempted so long as

4    it "manages to incorporate, but not depend entirely upon, an FDCA violation and is premised on

5    conduct that would give rise to liability under traditional common law principles."  *Id.* at 8

6    (quoting *In re* Bayer, 701 F. Supp. 2d at 369).

7    Plaintiff also rejects Defendants' contention that implied preemption applies, arguing that

8    the FTM and the two citations offered by Defendants -- 21 C.F.R. §§ 201 *et seq*. and 21 USC §§

9    301 *et seq*. -- are not sufficient to show that Congress intended to so thoroughly occupy the field

10   that there is no room for states to regulate conduct in that field.  *Id.* at 9-12.  With respect to the

11   regulations cited by Defendants, 21 C.F.R. §§ 201 *et seq*., Plaintiff points out that no specific

12   regulation was identified by Defendants and that most of the regulations in this section are

13   inapplicable on their face.  *Id.* at 10.

14   Plaintiff argues that Defendants' reliance on the FDCA, 21 U.S.C. §§ 301 *et seq.*, is also

15   misplaced because the legislative history indicates that in enacting that law, Congress did not

16   intend to preempt state law false advertising claims.  *Id.*  In particular, Plaintiff contends, in *Wyeth*

17   *v. Levine* the Supreme Court reviewed the legislative history of the FDCA and found that

18   Congress did not create a private right of action to protect consumers from false advertising in the

19   FDCA because common law claims to protect those rights were already available under state law.

20   *Id.* (citing *Wyeth v. Levine*, 555 U.S. 555, 574 n. 7 (2009)).  According to Plaintiff, some courts

21   have even found that Congress's failure to create a private right of action under the FDCA

22   constitutes "implied non-preemption."  *Id.* (citing *Consumer Justice Center v. Olympian Labs,*

23   *Inc.*, 99 Cal. App. 4th 1056, 1063 (2002)).

24   Plaintiff argues that Defendants' reliance on the 1994 Tentative Final Monograph to show

25   implied preemption is also misplaced because it has only the legal status of a proposed rule and

26   has never been followed by the issuance of a final monograph.  *Id.* at 11.  This means that the

27   FDA has enacted no regulations governing the labeling of antimicrobial products, according to

28   Plaintiff, and therefore, that the doctrine of field preemption does not apply.  *Id.*  at 11.  Plaintiff

United States District Court
Northern District of California

7

1   further points to the April 2011 warning letter that was sent to Defendants, which stated that "such

2   consumer-directed claims" as those found on Defendants' products "are not described in any OTC

3   final monograph, tentative monograph or any of the rulemakings being considered under the OTC

4   Drug Review." *Id.* at 11-12 (citing Notice of Removal, Ex. A to Ex. 1 at 37, 41).   Plaintiff also

5   argues that the *Pom Wonderful* case cited by Defendants is not on point.  *Id.* at 12-13.

6        Plaintiff responds to Defendants' other challenges to her claims as follows:

7   1)  Rule 8 of the Federal Rules of Civil Procedure:  Plaintiff contends that Defendants' argument

8   based on Rule 8 is a "straw man" based on the incorrect contention that her claims require that

9   Defendants' products kill germs within 30 seconds.  *Id.* at 2, 13-14.  According to Plaintiff,

10  Defendants have mischaracterized the allegations in Plaintiff's FAC, borrowing the 30 second

11  time frame that was used by the third party laboratory referenced in the complaint even though the

12  claims asserted by Plaintiff do not include any time frame.  *Id.* at 14.

13  2) Allegations relating to materiality:  Plaintiff argues that the question of whether the alleged

14  misrepresentations would have been material to a reasonable consumer is premature as it is a

15  question of fact.  *Id.* at 14-15 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir.

16  2008)).   Plaintiff further contends that her allegations are sufficient to meet the pleading

17  requirements of *Bell Atlantic v. Twombly* on this question, citing her allegation in paragraphs 17

18  and 45 of the FAC.  *Id.* at 15.  In paragraph 17, Plaintiff alleges that:

19              Plaintiff and reasonable consumers must and do rely on companies
20              such as Defendants to honestly state the nature of a product's
                qualities and ingredients, and companies such as Defendants intend
21              and know that consumers rely upon statements made on packaging,
                labels, advertisement and on the company's website in making their
22              purchasing decisions. Such reliance by consumers is reasonable
                because companies are prohibited from making false or misleading
                statements on their products' labels under federal and state law.
23

24  FAC ¶ 17.  In paragraph 45, Plaintiff alleges that "[h]ad Plaintiff and the Class members known

25  that Defendants' assertion was untrue, Plaintiff and the Class members would not have purchased

26  Defendants' Sanitizing Products."  FAC ¶ 45.  Plaintiff  argues that given the "well settled

27  importance of labels and marketing on consumer choice, and general logic which dictates that

28  representations regarding the ability of a product to perform the functions for which it is purchased

United States District Court
Northern District of California

1   would be material --this Court cannot determine as a matter of law that a significant portion of the

2   general consuming public acting reasonably would not find the representations material."

3   Opposition at 17.

4      3) <u>Allegations relating to reliance</u>:  Plaintiff argues that her allegations are sufficient to show

5   reliance on her UCL, FAL, CLRA, fraud and express warranty claims, pointing to her allegation in

6   paragraph 45 of the FAC, quoted above, that she would not have purchased Defendants' products

7   had she known that the representations on the labels were untrue.  *Id*.  According to Plaintiff, the

8   allegation that a plaintiff was deceived by a product's label into spending money to purchase a

9   product that she would not have purchased otherwise is sufficient at the pleading stage to show

10   reliance with respect to the UCL and FAL claims, as well as the fraud and express warranty

11   claims.  *Id*. at 18 (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011)).

12   Similarly, these allegations are enough to show injury-in-fact under the CLRA, Plaintiff asserts.

13   *Id*. at 19-21.  Further, to the extent Defendants challenge the standing of the class members on the

14   basis that some members may not have seen the allegedly misleading statements, this argument

15   fails, Plaintiff contends, because 1) it is premature;  and 2), it is improper for the Court to analyze

16   unnamed class members' standing where Defendants have not successfully challenged the

17   standing of the named plaintiff .  *Id*. at 18-19 (citing *Lewis v. Casey*, 518 U.S. 343, 395 (1996),

18   *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011)).

19      4) <u>Pleading requirements for fraud claim</u>:   Plaintiff contends that her allegations are sufficiently

20   specific to meet the requirements of Rule 9(b) for allegations of fraud and misrepresentation.  *Id*.

21   at 21 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  According to

22   Plaintiff, she alleges the "who" (FAC ¶¶ 4, 5, 10, 11 and 13), "what" (FAC ¶¶ 43, 45), "where"

23   (FAC ¶ 1) and "when" (FAC ¶¶ 24, 57).  Further, according to Plaintiff she alleges how the

24   statements misled her by alleging in paragraph 45 that she would not have purchased the product

25   but for the representation "and thus, she was deceived."  *Id*. at 21.

26      5) <u>Application of California law to a nationwide class</u>: Plaintiff argues that Defendants' argument

27   that the class is not certifiable is premature.  *Id*. at 22 (citing *Forcellati v. Hyland*, 876 F. Supp. 2d

28   1155, 1159 (2012), *Collins v. Gamestop* Corp., 2010 WL3077671, at *2 (N.D. Cal. 2010)).

Plaintiff concedes that "a few courts have held that Rule 12(f) provides a means of striking class allegations," *id*. (citing *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009)), but asserts that "such a motion appears to allow parties a way to circumvent Rule 23 in order to make a determination of the suitability of proceeding as a class action without actually considering the motion for class certification." *Id*. (citing *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796 (N.D. Cal. May 26, 2011)). Plaintiff rejects Defendants reliance on *Mazza v. Am. Honda Motor Co., Inc.*, cited by Defendants, arguing that the court in that case did not establish a bright-line rule that no nationwide class may be certified under California's consumer protection laws but instead conducted a detailed choice of law analysis to determine the propriety of extraterritorial application of California's consumer protection laws under the facts of that case. *Id*. Plaintiff also points out that *Mazza* was not decided on a motion to dismiss but on a motion for class certification. *Id*. Were the Court to conduct such an analysis, Plaintiff contends, the Court would find that Defendants have not met their burden under California's governmental interest test to show that California law should not be applied to class members outside of California. *Id*. at 23-25.

6) <u>Standing to seek injunctive relief</u>: Plaintiff concedes that she lacks standing to seek injunctive relief and stipulates to the dismissal of her request for injunctive relief in her Prayer for Relief.

In their Reply brief, Defendants reiterate their position that the FDCA preempts Plaintiff's claims and that the *Pom Wonderful* case is controlling. Reply at 1, 2-7. They further contend that Plaintiff has not rebutted the argument in their motion that Plaintiff's allegations are not sufficient to support an inference of falsity under Rule 8. *Id*. at 7-9. Similarly, Defendants assert, Plaintiff has not pleaded any facts showing that the alleged misrepresentations would be material to a reasonable consumer, *id*. at 9-11; nor has she alleged sufficient facts to show reliance, Plaintiff asserts. *Id*. at 11-13. Defendants reiterate their argument that Plaintiff's fraud allegations do not contain sufficient facts and point out that in her Opposition, Plaintiff does not address Defendants' assertion that she has not alleged in the FAC that Defendants were aware that their statements were false when they made them. *Id*. at 13-15.

United States District Court
Northern District of California

1

**C.     The Motion to Strike**

2       In their Motion to Strike, Defendants ask the Court to strike the following categories of

3   allegations from Plaintiff's FAC: 1) all class allegations; 2) all allegations relating to punitive

4   damages; 3) allegations seeking damages under the CLRA;  and 4) allegations seeking non-

5   restitutionary monetary damages on Plaintiff's  UCL and FAL claims.

6       As to the class allegations, Defendants contend that these should be stricken on several

7   grounds.  Motion to Strike at 1-2.  First, Defendants assert that under *Mazza v. Am. Honda Motor*

8   *Co*., 666 F.3d 581, 585 (9th Cir. 2012), it is unconstitutional to apply California law governing

9   false advertising to a nationwide class.  *Id*. at 2, 4-7.  Second, Defendants argue that Plaintiff's

10  class definition does not meeting standing requirements under Article III of the U.S. Constitution

11  because it includes individuals who may not have seen the allegedly misleading statements or

12  were not deceived by them and therefore suffered no damages.  *Id*. at 8-10 (citing *Sanders v. Apple*

13  *Inc.*, 672 F. Supp. 2d 978, 990-991 (N.D. Cal. 2009)).  Third, Defendants argue that Plaintiff may

14  not base a nationwide class action on fraud, warranty and false advertising claims "because

15  individual issues with respect to reliance overwhelmingly will predominate," thus defeating

16  commonality under Rule 23 of the Federal Rules of Civil Procedure.  *Id*. at 10-12.

17      According to Defendants, the Court may strike class allegations at the pleading stage under

18  Rule 12(f) where "the issues are plain enough from the pleadings to determine whether the

19  interests of absent parties are fairly encompassed within the named plaintiff's claim."  *Id*. at 4

20  (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)).  Defendants

21  contend that this is just what the court did in *Sanders v. Apple Inc*., where the court granted a

22  motion to strike class allegations under Rule 12(f).  *Id*.

23      Defendants further contend that Plaintiff's allegations relating to punitive damages should

24  be stricken because Plaintiff does not allege any facts showing "oppression, fraud, or malice," as is

25  required under California Civil Code Section 3294 to recover punitive damages.  *Id*. at 12-14.

26  Rather, Defendants assert, Plaintiff's allegations in support of punitive damages are "formulaic"

27  and "conclusory."  *Id*. at 13-14 (citing FAC ¶¶ 47, 70).  According to Defendants, such allegations

28  may properly be stricken under Rule 12(f).  *Id*. at 14 (citing *Wilkerson v. Butler*, 229 F.R.D. 166,

1    170 (E.D. Cal. 2005)).

2           Defendants also ask the Court to strike Plaintiff's damages claims under the CLRA on the

3    basis that Plaintiff has not complied with the requirements of California Civil Code Section 1782.

4    *Id.* at 14.  That section requires that a plaintiff may not seek damages under the CLRA without

5    first sending a notice letter, at least 30 days prior to the commencement of litigation, notifying the

6    person alleged to have violated the CLRA of the particular alleged violation.  Although this

7    requirement is not jurisdictional, Defendants assert, compliance with it is necessary to state a

8    claim.  *Id.* at 15 (citing *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40-41

9    (1975)).  Here, Defendants assert, Plaintiff sent her notice letter October 18, 2012, only seven days

10   before filing her original complaint, in which she sought punitive damages under the CLRA.  *Id.* at

11   15 (citing RJN No. 2, Ex. 1 (Notice Letter)).  Further, Defendants assert, the notice letter was

12   insufficient as to Plaintiff's current CLRA claim because it was based solely on the failure to

13   substantiate theory that Plaintiff abandoned in the FAC.  *Id.*  Therefore, Defendants assert, they

14   have never been provided with the required notice under the CLRA.  *Id.* (citing *Cattie v. Wal-Mart*

15   *Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007)).

16          Finally, Defendants ask the Court to strike allegations that appear to request non-

17   restitutionary recovery of monies lost under the UCL and the FAL.  *Id.* at 16 (citing FAC, p. 18,

18   lines 8-11; p. 20, lines 25-28).  Because monetary loss is outside the scope of these claims,

19   Defendants assert, these allegations should be stricken.  *Id.* (citing *Korea Supply Co. v. Lockheed*

20   *Martin Corp.,* 29 Cal. 4th 1134, 1150-51 (2003), *Madrid v. Perot Sys. Corp.,* 130 Cal. App. 4th

21   440, 460 (2005)).

22          In her Opposition, Plaintiff characterizes Defendants' motion as a "thinly veiled" motion to

23   deny class certification.  Opposition at 1.  Plaintiff argues that Defendants' request to strike her

24   class allegations on the basis that certification of a nationwide class in this case would be

25   unconstitutional is premature;  such allegations are stricken prior to discovery only in the "rare

26   case" where it is apparent from the pleadings that certification requirements cannot possibly be

27   met, and this is not such a case.  *Id.* at 5-7, 9-11.  Further, Plaintiff asserts, Defendants are

28   incorrect on the merits because there is no bright-line rule prohibiting application of California law

United States District Court
Northern District of California

12

1    to a nationwide class as a constitutional matter. *Id.* at 7-9. Nor have Defendants demonstrated

2    that the interests of any foreign jurisdiction outweigh California's interest in applying its own

3    consumer protection laws to the facts of this case, as would be required to establish that non-

4    California class members could not assert claims under California law, Plaintiff contends. *Id.*

5            Plaintiff argues that Defendants' challenges based on Rule 23 of the Federal Rules of Civil

6    Procedure -- namely, that the class definition encompasses individuals who do not have Article III

7    standing and that commonality among class members cannot be established -- also are not ripe and

8    have no merit. *Id.* at 9-17.  According to Plaintiff, at the pleading stage, a plaintiff is required to

9    make only a prima facie showing that Rule 23's prerequisites are met, and class certification may

10   be denied only if a plaintiff's allegations fail to make such a prima facie showing or to

11   "demonstrate that discovery measures are likely to produce persuasive information substantiating

12   the class action allegations." *Id.* at 10 (citing *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d

13   1304, 1313 (9th Cir. 1977)). Plaintiff contends that her allegations are sufficient to make a prima

14   facie case. *Id.* at 10-11.

15           Plaintiff argues that Defendants' challenge to the class definition based on the alleged lack

16   of standing of some unnamed class members fails because the standing of the class is evaluated

17   with reference to the named plaintiff only. *Id.* at 11-13 (citing *Stearns v. Ticketmaster Corp.*, 655

18   F.3d 1013, 1021 (9th Cir. 2011); *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *4 (N.D.

19   Cal. June 7, 2011); *Greenwood v. Compucredit Corp.*, 2010 WL 4807095, at *3 (N.D. Cal. Nov.

20   19, 2010); *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010)). Even if

21   unnamed members were considered, however, Plaintiff argues that there is no evidence that any

22   class member was not deceived by the statements on the labels of Defendants' Sanitizing

23   Products. *Id.* at 12. Plaintiff further asserts that *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D.

24   Cal. 2009), upon which Defendants rely, is distinguishable because in that case it was undisputed

25   that the allegedly misleading statements were not aimed at all of the members of the class. *Id.* at

26   12-13.

27           With respect to commonality, Plaintiff asserts that this case involves a "common course of

28   fraudulent conduct" and therefore "readily satisfies the commonality requirement." *Id.* at 13

1    (citing *Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975); *Armstrong v. Davis*, 275 F.3d

2    849, 868 (9th Cir. 2001); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998); *Johnson*

3    *v. General Mills, Inc.*, 276 F.R.D. 519,522-523 (C.D. Cal. 2011)).  According to Plaintiff, this case

4    raises several questions that are common to the class members including:

5         "a) whether Defendants' common representations to the class
         concerning the Sanitizing products, and the materially similar
6         representations on Defendants' website, were false?; (b) whether
         Defendants knew that the representations were false, and, if so,
7         when did they know that?; (c) whether the common representations
         at issue were material to the reasonable consumer?; and (d) whether
8         Defendants intended for customers to rely on its representations and
         omissions?"

9

10   *Id*. at 13.  Plaintiff also rejects Defendants' assertion that different facts among class members as

11   to reliance defeat commonality, arguing that if Plaintiff can establish the alleged

12   misrepresentations were material, the entire class will be entitled to a presumption of reliance.  *Id*.

13   at 14 (citing *Ewert v. eBay, Inc.*, C–07–02198, 2010 WL 4269259, at * 8 (N.D. Cal. Oct. 25, 2010)

14   (citing *In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009)); *Chavez v. Blue Sky Nat. Bev. Co.*, 268

15   F.R.D. 365, 378-79 (N.D. Cal. 2010); *Mass Mutual Life Ins. v. Superior Court*, 97 Cal.App.4th

16   1282, 1292 (2002)).  Moreover, Plaintiff contends, materiality is generally a fact question and

17   therefore need not be proved even at the class certification stage, so long as it presents a common

18   question suitable for class treatment.  *Id*. at 14-15 (*citing Massachusetts Mutual Life Ins. Co.*, 97

19   Cal.App.4th  at 1292-1295;  *Chavez*, 268 F.R.D. at 378-79; *Engalla v. Permanente Medical*

20   *Group, Inc*. 15 Cal.4th 951, 977 (1997)).

21        On the question of punitive damages, Plaintiff argues that Rule 12(f) does not authorize

22   courts to strike requests for damages.  *Id*. at 17 (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618

23   F.3d 970, 974 (9th Cir. 2010)).  Even if the Court were to find Defendants' request proper,

24   Plaintiff argues, the pleadings in the FAC are sufficient to support Plaintiff's request for punitive

25   damages.  *Id*. at 17-18 (citing FAC ¶¶ 18, 50, 51).

26        Plaintiff does not oppose Defendants' request to strike her allegation seeking punitive

27   damages under the CLRA on the basis that she has not fully complied with the notice

28   requirements of Cal. Civ. Code Section 1782.  *Id*. at 18.  She concedes that this allegation was

United States District Court
Northern District of California

included in the FAC in error.  However, she rejects Defendants' assertion that Plaintiff should be forever barred from seeking damages under the CLRA, arguing that such a rule "is draconian  and has been rejected by a number of courts."  *Id.* (citing *Sanbrook v. Office Depot, Inc.*, 2008 WL 1994884 (N.D. Cal. 2008); *Deitz v. Comcast Corp.*, 2006 WL 3782902, at *6 (N.D. Cal. 2006); *Kennedy v. Natural Balance Pet Foods, Inc.*, 2007 WL 2300746 (S.D. Cal. Aug. 8, 2007)).  Plaintiff points out that a notice letter was sent to Defendants prior to the filing of the original complaint, giving Defendants notice of the specific statements Plaintiff alleges are misleading, even if the theory of the case has now changed.  *Id.* at 19-20.  Therefore, Plaintiff asserts, while the CLRA punitive damages claim is subject to striking, she should be permitted to amend her complaint to seek CLRA punitive damages once she has complied with the notice requirements of Section 1782.  *Id.* at 20.

In their Reply brief, Defendants reiterate their position that Plaintiff's class allegations are "patently defective" and therefore should be stricken at the pleading stage of the case because application of California law to a nationwide class is unconstitutional and the requirements of Rule 23 cannot be met.  Reply at 1, 4-11.  Defendants reject Plaintiff's assertion that her allegations are sufficient to support her request for punitive damages, arguing that Plaintiff has not pointed to any facts sufficient to establish the sort of "vile" and "despicable" conduct that is required to warrant an award of punitive damages.  *Id.* at 3-4, 11-12.  Defendants also reject Plaintiff's contention that under *Whittlestone*, Rule 12(f) does not authorize district courts to strike a request for punitive damages, arguing that Plaintiff has mischaracterized their argument; specifically, Defendants do not contend that punitive damages are unavailable as a matter of law but rather, that Plaintiff has not alleged specific facts sufficient to support the request for punitive damages.  *Id.* at 11-12. Defendants also argue that the punitive damages claim under the CLRA should be stricken because it is undisputed that Plaintiff did not give proper notice and this defect cannot be cured.

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## III.     ANALYSIS

### A.     The Motion to Dismiss

#### 1.     Pleading Standards under Rule 8 and Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must give the defendant "fair notice of what the claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To meet this requirement, the complaint must be supported by factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth.  *Id*. at 679.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim on which relief can be granted.  A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotations omitted).  Together, *Iqbal* and *Twombly* represent "a two-step process for evaluation of motions to dismiss.  The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, 'plausibly give rise to an entitlement to relief.'"  *Fallcochia v. Saxon Mortg., Inc*., 709 F. Supp. 2d 860, 865 (E.D. Cal. 2010) (citing *Iqbal*, 556 U.S. at 679-680; *Erickson v. Pardus*, 551 U.S. 89 (2007)). Plausibility, as used in *Twombly* and *Iqbal*, refers to whether the non-conclusory factual allegations, when assumed to be true, "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*,  556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

16

1   a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

2        Where a court dismisses for failure to state a claim pursuant to Rule 12(b)(6), it "should

3   grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the

4   allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247

5   (9th Cir. 1990).

6                    **2.      Whether Plaintiff's Claims are Preempted under the FDCA**

7                           **a)      General Legal Standards Governing Preemption**

8        Federal preemption doctrine has its roots in the Supremacy Clause of the U.S.

9   Constitution, which provides that the Constitution and the laws of the United States "shall be the

10  supreme Law of the Land." *Fid. Fed. Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152

11  (1982); U.S. Const., art. VI, cl. 2.  Whether federal law may be said to preempt state law is a

12  question of congressional intent.  *Cal. Fed. Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 280

13  (1987).  A court may find that Congress intended to preempt state law in three different scenarios.

14  *Bank of Am. v. City and County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002).  First,

15  Congress may expressly preempt state law.  *Id.* (citing *Jones v. Rath Packing Co.*, 430 U.S. 519,

16  525 (1977)).   Second, "preemption may be inferred when federal regulation in a particular field is

17  'so pervasive as to make reasonable the inference that Congress left no room for the States to

18  supplement it.'" *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  Third,

19  federal law impliedly preempts state law where state law actually conflicts with federal law such

20  that compliance with both is a physical impossibility, or where the state law stands in the way of

21  the purposes and objectives of Congress.  *Id.* (citing *Florida Lime & Avocado Growers, Inc. v.

22  Paul*, 373 U.S. 132, 142-43 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

23       A court's inquiry into federal preemption begins "with the assumption that the historic

24  police powers of the States [are] not to be superseded by the Federal Act unless that was the clear

25  and manifest purpose of Congress."  *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008) (quoting

26  *Rice*, 331 U.S. at 230)); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("Congress

27  does not cavalierly pre-empt state-law causes of action").  This assumption  applies with particular

28  force when Congress has legislated in a field usually occupied by the states.  *Altria Group*, 555

United States District Court
Northern District of California

17

U.S. at 543.  On the other hand, it is not triggered  when the state regulates in an area "where there has been a history of significant federal presence."  *United States v. Locke*, 529 U.S. 89, 108 (2000).

b)      **Legal Standards Governing Preemption under the FDCA**

Section 337(a) of the FDCA provides, in part, as follows:

> (a) Except as provided in subsection (b) of this section, all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States. . . .

21 U.S.C. § 337(a).  Subsection (b) creates an exception that allows states to bring certain types of claims under the FDCA and is not applicable here.  Courts have interpreted Section 337(a) "to mean that no private right of action exists to redress alleged violations of the FDCA."  *Summit Technology, Inc. v. High-Line Medical Instruments Company, Inc.*, 922 F. Supp. 299, 305 (C.D. Cal. 1996) (citing *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 544 (3d Cir.), *cert. denied*, 513 U.S. 965 (1994) (citing *Pacific Trading Co. v. Wilson & Co., Inc.*, 547 F.2d 367, 370 (7th Cir.1976) ("violations of the FDCA do not create private rights of action"); *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir.1993), *cert. denied*, 510 U.S. 1197 (1994) (same); *Ginochio v. Surgikos, Inc.*, 864 F. Supp. 948, 956 (N.D.Cal.1994) (citing various courts that have held that "there is no private cause of action for violation of the Food, Drug, and Cosmetic Act.")).  Rather, the right to enforce the provisions of the FDCA lies exclusively with the federal government -- either the FDA or the Justice Department.  *Id.*  (citing *Fender v. Medtronic, Inc.*, 887 F. Supp. 1326, 1329 (E.D.Cal.1995)).

Courts have found that Section 337(a) not only bars claims by private litigants to enforce directly provisions of the FDCA but also claims that, while styled as claims under state law or other federal laws, are "effectively suing for a violation of the FDCA."  *In re Bayer Corp.*, 701 F. Supp. 2d 356, 369-70 (E.D.N.Y. 2010).  Under the Supreme Court's decision in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), such claims are found to conflict with the FDCA's prohibition on private enforcement of its provisions and therefore, to be impliedly preempted.  *Id.* In *Buckman*, the plaintiffs claimed that they were injured due to the use of orthopedic bone screws that were approved for sale by the FDA as a result of allegedly fraudulent statements to the FDA

18

1    by the company that helped the manufacturer obtain FDA approval to market the screws.  531

2    U.S. at 1015.  The plaintiffs asserted state law tort claims seeking damages based on the alleged

3    fraud on the FDA.  *Id.*  The Court began the analysis by noting that "[p]olicing fraud against

4    federal agencies is hardly 'a field which the States have traditionally occupied,' *Rice v. Santa Fe*

5    *Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), such as to warrant a

6    presumption against finding federal pre-emption of a state-law cause of action."  *Id.* at 1017.  The

7    Court went on to hold that in light of the fact that the relationship between a federal agency and

8    the entity it regulates is inherently federal in character, the plaintiffs' fraud claim conflicted with

9    the FDCA, stemming "from the fact that the federal statutory scheme amply empowers the FDA to

10   punish and deter fraud against the Administration, and that this authority is used by the

11   Administration to achieve a somewhat delicate balance of statutory objectives."  *Id.*

12        Based on *Buckman*, courts have distinguished claims that are preempted by the FDCA

13   from those that survive as follows:

14            a state law claim only endures if it manages to incorporate, but not
15            depend entirely upon, an FDCA violation and is premised on
             conduct that would give rise to liability under traditional common
16            law principles. On the other hand, if "defendant's conduct is not of
             this type," i.e., would not expose it to liability but for the FDCA,
17            "then the plaintiff is effectively suing for a violation of the FDCA
             (no matter how the plaintiff labels the claim), and the plaintiff's
18            claim is thus impliedly preempted under *Buckman*."

19   *In re Bayer*, 701 F. Supp. 2d at 369 (quoting  *Lefaivre v. KV Pharm. Co*., No. 4:09CV00588, 2010

20   WL 59125, at *3 (E.D.Mo. Jan. 5, 2010));  *see also Mutual Pharmaceutical Co. v. Ivax*

21   *Pharmaceuticals, Inc.*, 459 F.Supp.2d 925, 935 (C.D. Cal., 2006)("So long as courts are not

22   required to perform 'authoritative interpretation and direct application of FDA regulations,' then

23   the simple fact that a matter touches upon an area dealt with by the FDA is not a bar to proceeding

24   with a claim under the Lanham Act") (quoting *Summit Technology v. High–Line Medical*

25   *Instruments Co*., 933 F. Supp. 918, 933 (C.D.Cal.1996)).

26        Applying these principals, courts have found that claims are not preempted by the FDCA

27   where those claims are "based on parallel state laws that mirror the relevant sections of the

28   FDCA."  *Khasin v. Hershey Co*., 2012 WL 5471153, at *4 (N.D. Cal. Nov. 9, 2012).  Thus,

United States District Court
Northern District of California

United States District Court
Northern District of California

consumer fraud claims based on statements that are alleged to be literally false, as a factual matter, have generally been found to be permissible under the FDCA. *See In Re: Epogen & Aranesp Off-Label Marketing & Sales Practices Litig*, 590 F. Supp. 2d 1282, 1291 (C.D. Cal. 2008)( holding that state consumer fraud claims based on the allegation that statements made by the defendants were literally false were not preempted by the FDCA, even though the statements at issue were made to promote off-label uses of a drug product and therefore touched upon an area dealt with by the FDA); *Summit Technology, Inc. v. High-Line Medical Instruments Company, Inc.*, 922 F. Supp. 299, 307 (C.D. Cal. 1996) ("*Summit I*") ("Clearly under both *Mylan* and *Grove Fresh*, a plaintiff may bring a Lanham Act cause of action for affirmatively misrepresenting facts, even if the truth of those facts may be governed by FDA regulations") (citing *Grove Fresh Distributors, Inc. v. The Flavor Fresh Foods, Inc.*, 720 F. Supp. 714, 715 (N.D. Ill. 1989) (holding that FDCA did not preempt Lanham Act claim based on allegation that statement on label that orange juice was 100% pure was false because the claim turned on a factual determination that could be resolved without reference to any FDA regulation) and *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993) (holding that Lanham Act claim based on *failure* to disclose non-FDA approval was barred because it did not involve an affirmative misrepresentation but allowing Lanham Act claim based on allegation that statements that product was bioequivalent were factually untrue); *Summit Technology, Inc. v. High-Line Medical Instruments, Co.*, 933 F. Supp. 918, 933 (C.D. Cal. 1996) ("*Summit II*") ( noting that "false statements are actionable under the Lanham Act, even if their truth may be generally within the purview of the FDA"); *see also Wyeth v. Levine*, 555 U.S. 555, 574, 577-578 (2009) (holding that as to prescription drugs, the FDCA creates a floor but not a ceiling for warning labels and noting that "[i]f Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express preemption provision at some point during the FDCA's 70-year history").

### c)      The Ninth Circuit's *Pom* Decision

Defendants rely heavily upon the Ninth Circuit's decision in *Pom Wonderful LLC v. Coca-Cola Company*, 679 F.3d 1170 (9th Cir. 2012) in support of their position that Plaintiff's claims are preempted.  In fact, as several district courts have noted in the wake of *Pom*, the holding in that

1    case is based not upon preemption but rather, the doctrine of primary jurisdiction.  *See  Astiana v.*

2    *Hain Celestial Group, Inc.*, --- F.Supp.2d ----, 2012 WL 5873585 (N.D.Cal., Nov. 19, 2012)

3    ("While defendants' motion construes *Pom* as a case about preemption, a closer reading of the

4    case shows that *Pom* is actually based on the idea of deference to the FDA"); *Ivie v. Kraft Foods*

5    *Global, Inc.*, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ("Defendants rely primarily on the Ninth

6    Circuit['s] . . . decision in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012),

7    where the court of appeals dismissed federal Lanham [A]ct claims implicitly on the basis of

8    primary jurisdiction of the FDA").

9         In *Pom*, the plaintiff (Pom) brought a Lanham Act claim against Coca-Cola, alleging that

10   Coca-Cola's labeling, marketing and advertising of its product "Pomegranate Blueberry" violated

11   the false advertising provision of the Lanham Act and also violated California's unfair competition

12   law (UCL) and False Advertising Law (FAL) because they misled consumers into believing that

13   the juice drink consisted primarily of blueberry and pomegranate juice when in fact, it consists

14   mainly of apple and grape juices.  679 F.3d at 1173-74.  The Ninth Circuit held that the FDCA

15   barred Pom's Lanham Act claim based on both the naming and labeling of the product.  *Id.* at

16   1176.  With respect to the naming, the court concluded that Coca-Cola's name was authorized by

17   regulations that appeared to allow manufacturers to name a beverage using the name of a flavoring

18   juice that is not predominant.  *Id*. at 1176-77 (citing 21 C.F.R. § 102.33(c), (d)).  To the extent that

19   the regulations were unclear, the court explained, it would be inappropriate to rule on the claim

20   because it would require the court to "originally interpret ambiguous FDA regulations," which

21   "would usurp the FDA's interpretive authority."  *Id*. at 1176.

22        Similarly, the court found that Pom's Lanham Act claim challenging the labeling of Coca-

23   Cola's product on the basis that the name of the product ("Pomegranate Blueberry") should not

24   appear more prominently on the label than the words "Flavored Blend of 5 Juices," was barred

25   because a ruling by the court on that claim threatened  to undercut the FDA's "expert judgments

26   and authority."  *Id*. at 1177.  The court reasoned that the FDCA and its implementing regulations

27   have extensively regulated the labeling of food and beverages, identifying "the words that may or

28   may not be included on labeling" and "specif[ying] how prominently and conspicuously those

words and statements must appear." *Id.* at 1177 (citing 21 U.S.C. § 343(f), (i); 21 C.F.R. § 102.33(c), (d)).  Thus, the court held, "Congress and the FDA have . . . considered and spoken to what content a label must bear, and the relative sizes in which the label must bear it, so as not to deceive." *Id.*  The court noted further that "[i]f the FDA believes that more should be done to prevent deception, or that Coca-Cola's label misleads consumers, it can act." *Id.*

Finally, as to the state law claims asserted in *Pom* under the UCL and FAL, the court of appeals vacated the district court's finding, on summary judgment, that the plaintiffs lacked standing to assert those claims because they could not demonstrate that they would be entitled to restitution from the plaintiff. *Id.* at 1174, 1178.  Citing the California Supreme Court's decisions in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310) (2011) and *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (2010), which were decided after the district court entered judgment and indicate that standing under the UCL and FAL does not depend on eligibility for restitution, the Ninth Circuit vacated the dismissal of the two claims and remanded  to the district court for further consideration on the question of standing. *Id* at 1179.  The court of appeals noted that if the district court found that Pom had statutory standing, it might need to address the question of whether Pom's state law claims were expressly preempted.  *Id.*  However, it did not reach the question of whether the FDCA preempted the state law claims.

The undersigned agrees with the courts in *Astiana* and *Ivie* that the *Pom* decision was based on the doctrine of primary jurisdiction, "which allows the court, 'under appropriate circumstances, [to] determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts.'" *Astiana*,  2012 WL 5873585, at *2 (quoting *Syntek Semiconductor Co., Ltd. v. Microchip Technology, Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)).  The doctrine of primary jurisdiction applies when there is "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781-782;  *see also Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) ("The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without

1    prejudice pending the resolution of an issue within the special competence of an administrative

2    agency").

3             In *Astiana*, the plaintiff brought state law claims under the UCL, FAL and CLRA asserting

4    that statements on the defendants' cosmetic products that the products were "all natural," "pure

5    natural," and "pure, natural, and organic" were false and misleading court.  2012 WL 5873585, at

6    * 2-3.  Relying on *Pom* and *Syntek*, the court held that the doctrine of primary jurisdiction applied,

7    reasoning as follows:

8              In the absence of any FDA rules or regulations (or even informal
               policy statements) regarding the use of the word "natural" on
9              cosmetics labels, the court declines to make any independent
               determination of whether defendants' use of "natural" was false or
               misleading.  Doing so would 'risk undercutting the FDA's expert
10             judgments and authority.'

11   *Id*. at *3 (citing *Pom*, 679 F.3d at 1177).  In contrast, in *Ivie*, the court concluded that the primary

12   jurisdiction doctrine did not apply to the plaintiff's claims as to most of the allegedly misleading

13   statements on the defendants' products because "the vast majority of plaintiff's UCL, FAL and

14   CLRA claims . . . are predicated on California state law violations that mirror or are identical to

15   FDA provisions which require no original interpretation by this court."  2013 WL 685372, at *7

16   (N.D. Cal. Feb. 25, 2013).  The court did, however, dismiss the plaintiff's claims based on

17   statements relating to serving sizes of the defendants' mints, finding that the FDA was "currently

18   in the process of amending its serving size regulations with respect to small breath mints."  *Id*.  In

19   particular, the court pointed out that the FDA had proposed a new regulation in 1997, that it heard

20   notice and comments on the regulation in 2005, and in February 2012 included the proposed rule

21   on its regulatory agenda for the year."  *Id*.  Therefore, as to that statement, the court found that the

22   plaintiff's claims would usurp the FDA's expertise and that the claims were barred under the

23   doctrine of primary jurisdiction.  *Id*.[3]

24   _____

25   [3] Following oral argument, Defendants requested leave to submit supplemental authority, namely,
     the district court's decision in *Pom* on remand.  *See* Docket No. 37 (citing *Pom Wonderful v. Coca
26   Cola*, 213 U.S. Dist. LEXIS 33501 (C.D. Cal. Feb. 13, 2013).  Plaintiff opposed the request on the
     ground that that decision is not relevant to the issues before the Court.  The Court has considered
27   the district court's decision and finds that it is not on point.  In particular, the district court found
     that the state law UCL and FAL claims were expressly preempted by an FDCA provision (enacted
28   as part of the Nutrition Labeling and Education Act of 1990) that relates to food labeling,
     providing that States are prohibited from imposing requirements for the labeling of certain types

United States District Court
Northern District of California

1

**d)     Application**

2

**(1)     Preemption**

3          Although Defendants contend that Plaintiff's state law claims are subject to both express

4    and implied preemption, they have identified no statutory or regulatory provision that expressly

5    preempts Plaintiff's claims.  Thus, only implied preemption is at issue here.  Based on the

6    authority discussed above, the Court concludes that doctrine also does not apply.

7          Although Section 337(a) of the FDCA prohibits private enforcement actions, Plaintiff's

8    claims are not based on the FDCA but rather, are based on parallel state laws that mirror the

9    relevant sections of the FDCA.  They do not require the Court to interpret any provision of the

10   FDCA or regulation promulgated thereunder.  Indeed, the only specific regulations that are cited

11   by Defendants, the Tentative Final Monograph, were never adopted and have only the legal status

12   of a proposed rule.  See RJN 2, Ex. 2 at 31402 ("The [FDA] is issuing a notice of proposed

13   rulemaking in the form of an amended tentative final monograph  that would establish conditions

14   under which over-the-counter (OTC) topical health-care antiseptic drug products are generally

15   recognized as safe and effective and not misbranded"); 31403 ("[t]he legal status of each tentative

16   final monograph . . .  is that of a proposed rule").   Rather, Plaintiff's claims only require the court

17   to make a factual determination as to whether the statements on the labels of Defendants

18   Sanitizing  Products are false.   As the decisions in, *inter alia*, *Grove Fresh*, *Mylan, Summit I* and

19   *Summit II* have made clear, such claims do not give rise to implied preemption.  Therefore, the

20   Court rejects Defendants' assertion that Plaintiff's claims are preempted under the FDCA.

21

**(2)     Primary Jurisdiction Doctrine**

22         Defendants rely heavily upon the *Pom* decision.  The Court finds, however, that the

23   doctrine of primary jurisdiction that is the basis for that decision does not apply here.

24         *Pom*, *Astiana* and *Ivie* teach that where a claim is within the purview of the FDA's

25   regulatory authority and the determination requires the expertise of the FDA, the court should not

26   decide the question before the FDA has had an opportunity to address it.  In this case, it is

27

28
of food that are not identical to the requirements imposed under the FDCA.  *See* 21 U.S.C. § 343-
1. There is no such provision at issue in this case.

United States District Court
Northern District of California

undisputed that the FDA has the authority to regulate the labeling and testing of hand sanitizers and antimicrobial products. It is also undisputed that the Tentative Final Monograph, which set forth specific proposed regulations in this area, was never enacted.  Whether the FDA has plans to engage in further efforts to adopt regulations in this area has not been addressed by the parties. Even assuming it does, however, the Court believes that the *Pom* holding does not extend to state law consumer protection claims that are based on the allegation that statements made by the defendants are factually incorrect, at least where, as here, there are no regulations suggesting the FDA has adopted a contrary position.  Such claims do not turn on determinations that require the expertise of the FDA as to what renders a statement misleading as incorrect factual statements are, by definition, false and misleading.  Further, if the Court were to apply the *Pom* holding to cases involving claims based on allegations that the statements at issue are factually incorrect, it would run afoul of the many decisions that have permitted state law and Lanham Act claims where the statements at issue were alleged to be factually incorrect.

The Court concludes that the determination of whether the statements at issue in this case are false and misleading because they are factually incorrect does not risk usurping the expertise of the FDA and therefore, that the Court may address Plaintiff's claims.

### 3.    Rule 8 Requirements

Defendants assert that Plaintiff's allegations do not satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) because nothing in the statements that are at issue suggests that Defendants' products kill 99.99% of germs in thirty seconds.  *Id*. at 2-3, 12-14.  Their argument has no merit.  Although Plaintiff has alleged specific facts about the testing of Defendants' products conducted by a third party, including the results of testing that measured the percentage of germs killed in 30 seconds, her claims do not depend on that time frame.  Nor does the Court find that the decision in *Rosen v. Unilever United States, Inc.*, 2010 WL 4807100 (N.D.Cal., May 3, 2010) is on point.  In that case, the court found that the plaintiff's claims were based on what the court found to be an illogical premise about the nature of product and the allegedly misleading representations.  Here, the relationship between the statements and the

United States District Court
Northern District of California

1    products is straightforward:  the statements claimed a certain level of efficacy whereas the

2    products did not actually perform to that level of efficacy. Therefore, the Court rejects Defendants'

3    contention that Plaintiff's claims should be dismissed on that basis.

4              **4.       Allegations Regarding Materiality**

5              Defendants contend the allegations in the FAC do not support a plausible inference that the

6    alleged misrepresentations would be material to a reasonable consumer.  The Court finds that this

7    question is not suitable for determination on a motion to dismiss.

8              Plaintiff's claims under the UCL, FAL and CLRA are governed by the "reasonable

9    consumer" test, which requires that a plaintiff demonstrate that members of the public are likely to

10   be deceived.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citations

11   omitted).   While a district court should grant a motion to dismiss if the plaintiff has not pled

12   "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v.*

13   *Twombly*, 550 U.S. 544 (2007), California courts have recognized that whether a business practice

14   is deceptive will usually be a question of fact not appropriate for decision at the pleading stage of

15   the case.  *Id.* (citations omitted).

16             Here, Plaintiff alleges that she relied on the statements on the label, FAC ¶ 17, and that she

17   would not have purchased Defendants' Sanitizing Products had she known that the statements

18   were false.  FAC ¶ 45.  Given that the purpose of Defendants' Sanitizing Products is to kill germs

19   and the statements allegedly overstate the effectiveness of the products in achieving that objective,

20   these allegations are at least plausible and therefore satisfy the pleading standards of *Iqbal* and

21   *Twombly*.

22             Defendants' reliance on *Sioux Honey* in support of a contrary result is misplaced.    In that

23   case, the court dismissed the plaintiff's claims under the UCL, FAL and CLRA on the basis that

24   the allegations did not give rise to a plausible inference that the labeling at issue was misleading

25   where the alleged misrepresentation was that the label identified the product as honey without

26   indicating that all pollen had been removed from the product.  *See Ross v. Sioux Honey Assoc.*,

27   2013 U.S. Dist. LEXIS 6181, *49 (N.D. Cal. January 14, 2013).  Because the complaint in that

28   case contained only "threadbare" allegations that the presence or absence of pollen plays a

26

United States District Court
Northern District of California

1  substantial part in the reasonable consumer's decision to purchase honey, the court found that the

2  claim was not plausible.  In this case, in contrast to *Sioux Honey*, the statements at issue are

3  directed at what is undisputedly the primary purpose of the products at issue, namely, to kill

4  germs, giving rise to a plausible inference that a reasonable consumer would consider them

5  material.  Therefore, the court's determination that materiality was not sufficiently alleged in

6  *Sioux Honey* does not apply to the facts here.

7                                **5.      Allegations Regarding Reliance**

8            Defendants argue that Plaintiff's state law claims fail because Plaintiff has not adequately

9  alleged facts showing that either the named plaintiff or the class members have standing to bring

10  these claims.  In particular, Defendants argue that Plaintiff has not alleged facts showing actual

11  reliance on the alleged misrepresentations  by the named plaintiff  because her allegations amount

12  to a claim that Defendants failed to substantiate the allegedly misleading statement, a claim that

13  only the federal government can assert under the FDCA.  As to the class, Defendants contend that

14  the claims fail to the extent the class includes members who may not have seen the statements or

15  were not deceived by them.  The Court rejects both arguments.

16            First, as to the named Plaintiff, Defendants have mischaracterized Plaintiff's allegations.

17  Defendants point to the allegation that "[h]ad Plaintiff known that there was insufficient evidence

18  to support these claims, she would not have purchased the product."  FAC ¶ 19.  However,

19  elsewhere in the FAC, Plaintiff alleges that "[h]ad Plaintiff and the Class members known that

20  Defendants' assertion was untrue, Plaintiff and the Class members would not have purchased

21  Defendants' Sanitizing Products."  FAC ¶ 45.  Thus, Plaintiff's claims are based not on failure to

22  substantiate but rather on the allegation that she purchased a product that did not do what it

23  claimed to do, for which she would not have been willing to pay had she known that the statement

24  was untrue.  This allegation is sufficient to establish economic injury, and thus standing, on

25  Plaintiff's UCL, FAL, CLRA and warranty claims.  *See Kwikset Corp. v. Superior Court*, 51 Cal.

26  4th 310, 322 (2011) ("For each consumer who relies on the truth and accuracy of a label and is

27  deceived by misrepresentations into making a purchase, the economic harm is the same: the

28  consumer has purchased a product that he or she paid more for than he or she otherwise might

have been willing to pay if the product had been labeled accurately"); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-328 (2009).

The Court does not find that *Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July 19 2012), cited by Defendants, stands for a contrary result. In *Boysen,* the court found that the plaintiffs did not have standing to assert UCL and FAL claims based on the allegation that juice drinks that were labeled as "Heart Healthy" actually contained lead and arsenic. *Id*. at *2. The plaintiffs did not allege that they were actually harmed by the product but rather that they would not have purchased the product had they known it contained lead and arsenic. *Id*. The court found that because the plaintiffs had not alleged that the product was unfit for its intended use, they had not demonstrated standing under the UCL or FAL. *Id*. at *6. It distinguished, however, cases in which the alleged misrepresentation caused a plaintiff to purchase a product that did not perform as well as represented. *Id*. As that is the basis for Plaintiff's claims here, *Boysen* does not apply. Therefore, the Court rejects Defendants' assertion that Plaintiff's claims should be dismissed for failure to adequately plead reliance as to the named Plaintiff.

Second, the Court rejects Defendants' assertion that the Court should dismiss Plaintiff's claims based on a lack of standing on the part of the class. Defendants rely upon the decision in *Sanders v. Apple* Inc., 672 F. Supp. 2d 978 (N.D. Cal. 2009). In that case, however, the court simply found that the issue was "plain enough from the pleadings" to strike the plaintiff's class allegations on the basis that in light of the broad class definition, individual questions of reliance would predominate, thus precluding class certification under Rule 23. 672 F.Supp.2d at 990-991. The court did not characterized its holding as being one based on standing on the part of the class members; indeed, doing so would have been inconsistent with the well-established rule that standing in a class action is determined with reference to named plaintiffs only. *See Lewis v. Casey,* 518 U.S. 343, 395 (1996); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011). The Court here does not find the issue of standing to be sufficiently clear at this stage of the case to warrant dismissing the class claims as to the class members.

### 6.    Application of California Law to Nationwide Class

Defendants ask the Court to hold that a nationwide class cannot be certified as to Plaintiff's

United States District Court
Northern District of California

state law claims, citing *Mazza v. American Honda Motor Co., Inc*., 666 F.3d 581 (9th Cir. 2012)

for the proposition that nationwide classes do not have standing to assert California consumer

protection statutes.   *Mazza*, however, did not establish such a bright-line rule but rather,

determined on the basis of a detailed choice-of-law analysis, at the class certification stage of the

case, that in *that case* California law should not be applied to non-California residents.  *Id*. at 594

("Under the facts and circumstances of this case, we hold that each class member's consumer

protection claim should be governed by the consumer protection laws of the jurisdiction in which

the transaction took place").  Such an inquiry is most appropriate at the class certification stage of

the case, after the parties have engaged in discovery.  The Court finds the choice of law question

raised by Defendants to be premature and therefore declines Defendants' invitation to engage in

such an analysis at this early stage of the case.

### 7.      Rule 9(b) Pleading Requirements

Fraud claims and claims that sound in fraud are required to meet the pleading requirements

of Rule 9(b) of the Federal Rules of Civil Procedure.[4]  *Kearns v. Ford Motor Co*., 567 F.3d 1120,

1125 (9th Cir. 2009) (holding that while fraud is not a necessary element of CLRA and UCL

claims, heightened pleading requirements of Rule 9(b) applied to those claims where the plaintiff

alleged a uniform course of fraudulent conduct as the basis for those claims).  Here, Defendants

contend that all of Plaintiff's claims sound in fraud and Plaintiff does not disagree.  Therefore, the

Court must determine whether Plaintiff has met the requirements of  Rule 9(b) as to all of her

claims. The Court finds that Plaintiff has adequately pleaded the circumstances of the alleged

fraudulent conduct under Rule 9(b).

In *Vess v. Ciba-Geigy Corp.*, the Ninth Circuit explained that the heightened pleading

---

[4] Rule 9(b) provides as follows:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

1    requirement under Rule 9(b) "demands that, when averments of fraud are made, the circumstances

2    constituting the alleged fraud be specific enough to give defendants notice of the particular

3    misconduct . . . so that they can defend against the charge and not just deny that they have done

4    anything wrong."  317 F.3d at 1106.  Thus, "[a]verments of fraud must be accompanied by the

5    who, what, when, where, and how of the misconduct charged."  *Id*. (citation and quotation

6    omitted).   Plaintiff has met this standard by identifying specific products and statements at issue,

7    as well as when and where she purchased one of Defendants' products.  These allegations are

8    sufficient to provide Defendants with the notice required under Rule 9(b).[5]

9                    **8.      Magnusson-Moss Claim**

10         To the extent the Court concludes that Plaintiff  has adequately pleaded her state law

11   claims, Defendants' challenge to Plaintiff's Magnusson-Moss claim also fails.

12        **B.      The Motion to Strike**

13             **1.      Legal Standard under Rule 12(f)**

14        Under Rule 12(f) of the Federal Rules of Civil Procedure, the court may strike from any

15   pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous

16   matter."   Motions to strike are generally disfavored.  5C Charles Alan Wright & Arthur R. Miller,

17   Federal Practice and Procedure § 1380 (3d ed. 2004). "The function of a 12(f) motion to strike is

18   to avoid the expenditure of time and money that must arise from litigating spurious issues by

19   dispensing with those issues prior to trial . . ."  *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d

20   970, 973 (9th Cir. 2010) (internal quotations omitted; citations omitted).

21         In *Whittlestone*, the Ninth Circuit reviewed a district court decision striking a plaintiff's

22   claim for lost profits and consequential damages from plaintiff's complaint pursuant to Rule 12(f).

23   *Whittlestone*, 618 F.3d at 973.  The Ninth Circuit concluded that the claim for lost profits and

24   consequential damages was not properly the subject of a motion to strike because the claim was

25   not (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous.

26

27   _____
     [5] The Court notes that Defendants also assert that Plaintiff's allegations as to knowledge fail to

28   meet the pleading requirements of Rule 9(b).  However, Rule 9(b) expressly provides that
     knowledge "may be alleged generally."  Therefore, the Court rejects Defendants' position.

United States District Court
Northern District of California

*Id.* at 973-974.  The court went on to reject the defendant's argument that the claim should be stricken from the complaint as precluded as a matter of law.  *Id.* at 974.  The Ninth Circuit explained that an attempt to dismiss a portion of the plaintiff's complaint is better suited to a 12(b)(6) motion.  *Id.*  It reasoned that if Rule 12(f) were allowed to be used to dismiss some or all of a pleading, it would create redundancies with Rule 12(b)(6).  *Id.*  Therefore, the Ninth Circuit held that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.  *Id.* at 974-975.

### 2.    Class Allegations

Defendants seek to strike Plaintiff's class allegations on the grounds that: 1) the Court may not constitutionally apply California consumer protection law to non-residents under *Mazza*; and 2) the class definition includes individuals who do not have standing because they did not see or were not deceived by the allegedly misleading statements, thus warranting dismissal of the class allegations under *Sanders*.  The Court has addressed these arguments in the context of the Motion to Dismiss and found that they are premature.  Therefore, the Court denies Defendants' Motion to Strike as to the class allegations.

### 3.    Punitive Damages

As discussed above, a motion to strike is not a proper vehicle for seeking dismissal of a claim for damages under *Whittlestone*.  Although Defendants seek to distinguish *Whittlestone* on the basis that the challenge here is based on Plaintiff's failure to allege specific facts -- rather than the argument that punitive damages are barred as a matter of law, as in *Whittlestone* -- Defendants do not cite any authority supporting the proposition that failure to support a claim for damages with specific facts falls within the ambit of Rule 12(f), which allows the Court to strike material that is "redundant, immaterial, impertinent or scandalous."  Further, Defendants' reliance on *Wilkerson v. Butler*, 229 F.R.D. 166 (E.D. Cal. 2005), in which the court granted a motion to strike the plaintiff's request for punitive damages on the basis that  punitive damages were not recoverable as a matter of law, is misplaced because that case was decided before *Whittlestone* and was effectively overruled by that case.  Accordingly, the Court denies Defendants' Motion to Strike as to Plaintiff's request for punitive damages.

United States District Court
Northern District of California

1

### 4.    CLRA Allegations

2          Defendants ask the Court to strike the allegation in support of Plaintiff's CLRA claim

3   requesting damages on the basis that Plaintiff failed to give the required notice under California

4   Civil Code Section 1782.  Plaintiff does not dispute that her damages claim under the CLRA is

5   subject to striking, but she asks that she be permitted to amend her complaint to add such a claim

6   following compliance with Civil Code Section 1782.  Thus, the question before the Court is

7   whether or not Plaintiff should be permitted to amend her complaint to seek damages under the

8   CLRA once the CLRA's notice requirement is satisfied.  The Court concludes that she should.

9          "The CLRA makes unlawful, in [California] Civil Code section 1770, subdivision (a), . . .

10  various 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any

11  person in a transaction intended to result or which results in the sale or lease of goods or services

12  to any consumer.'"  *Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 639 (2009).   A consumer who

13  suffers damage as a result of an act or practice declared unlawful in the CLRA may seek to

14  recover actual damages, punitive damages, or injunctive relief.  Cal. Civ. Code, Section 1780.

15  Further, Section 1781 provides that "[a]ny consumer entitled to bring an action under Section

16  1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly

17  situated, bring an action on behalf of himself and such other consumers to recover damages or

18  obtain other relief as provided for in Section 1780."

19         The CLRA limits damages claims, however, by imposing a prefiling notice requirement.

20  In particular, it provides that "[t]hirty days or more prior to the commencement of an action for

21  damages pursuant to this title, the consumer shall . . . 1) Notify the person alleged to have

22  employed or committed methods, acts, or practices declared unlawful by Section 1770 of the

23  particular alleged violations of Section 1770[; and] 2) Demand that the person correct, repair,

24  replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770."

25  Cal. Civ. Code Section 1782(a).  Section 1782(b) further provides that "[e]xcept as provided in

26  subdivision (c), no  action for damages may be maintained under Section 1780 if an appropriate

27  correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable

28  time, to the consumer within 30 days after receipt of the notice."  Subsection c, in turn, bars class

action damages claims under the CLRA where the defendant makes a showing that the following

exist:

> (1) All consumers similarly situated have been identified, or a reasonable effort to identify such other consumers has been made.
> (2) All consumers so identified have been notified that upon their request the person shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.
> (3) The correction, repair, replacement, or other remedy requested by the consumers has been, or, in a reasonable time, shall be, given.
>
> (4) The person has ceased from engaging, or if immediate cessation is impossible or unreasonably expensive under the circumstances, the person will, within a reasonable time, cease to engage, in the methods, act, or practices.

Cal. Civ. Code Section 1782(c).   The notice requirement does not apply to claims for injunctive

relief under the CLRA. Cal. Civ. Code Section 1782(d).  Where a party asserts a claim for

injunctive relief under the CLRA, the complaint may be amended to add a claim for damages

"[n]ot less than 30 days after the commencement of an action for injunctive relief, and after

compliance with subdivision (a)."  *Id.*

The notice requirement under the CLRA is not jurisdictional, but compliance with it is

necessary to state a claim.  *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40-41

(1975)).   Courts have differed on the question of whether a plaintiff whose CLRA claim for

damages is dismissed for failure to give the required notice may subsequently amend to add a

claim for damages once it has been demonstrated that proper notice has been given and the

requisite thirty days has pass.  *See Cattie v. Wal-Mart Stores, Inc*., 504 F. Supp. 2d 939 (S.D.

Cal.2007) (CLRA claim dismissed with prejudice on basis that CLRA notice requirements must

be strictly applied);  *Laster v. T-Mobile USA, Inc*., 407 F.Supp.2d 1181 (S.D. Cal., 2005) (same);

*Von Grabe v. Sprint*, 312 F.Supp.2d 1285 (S.D. Cal. 2003) (same).  *But see  Deitz v. Comcast

Corp.*, 2006 WL 3782902 (N.D. Cal., Dec. 21, 2006) (holding that where claim for damages under

CLRA was subject to dismissal due to failure to comply with notice requirement,  plaintiff could

amend to add damages claim under CLRA after  deficiency had been cured, reasoning that

dismissal of damages claim with prejudice would be a "draconian sanction" and noting, "[g]iven

that the legislature specifically contemplated that an action seeking injunctions can be amended to

include a damages claim after the thirty days have run, the goal of the legislature would best be

United States District Court
Northern District of California

served by allowing amendment in the circumstances of this case."); *Keilholtz v. Superior Fireplace Co*., 2009 WL 839076 (N.D. Cal., Mar. 30, 2009) (finding reasoning of *Dietz* persuasive and holding that CLRA damages claim that was subject to dismissal could be asserted once notice requirement was satisfied); *Wehlage v. Empire Healthcare Inc.*, 2012 WL 380364 (N.D. Cal., Feb. 6, 2012) (same).  In *Wehlage*, the court found that the reasoning of *Dietz* was consistent with a California appellate case, *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1261-1262 (2009).  This Court finds Judge Wilken's discussion of this question in *Wehlage* to be persuasive and therefore concludes that Plaintiff should be permitted to amend her complaint to assert a claim for damages when she has satisfied the CLRA's notice requirement.

**IV.    CONCLUSION**

For the reasons stated above, the Motion to Dismiss is DENIED. The Motion to Strike is GRANTED as to the request for damages on Plaintiff's CLRA claim, which is dismissed without prejudice.  It is also granted as to allegations seeking non-restitutionary damages on Plaintiff's UCL and FAL claims pursuant to Plaintiff's stipulation.  In all other respects it is DENIED.  When Plaintiff has satisfied CLRA's notice requirement, she may request permission to reallege a CLRA damages claim.

IT IS SO ORDERED.

Dated:  April 16, 2013

Joseph C. Spero
United States Magistrate Judge

34